GULF, COLORADO & SANTA FE RAILWAY COMPANY v. A. BRUGGER.

Decided November 20, 1900.

**1. Condemnation Proceedings—Opening and Conclusion.**

Where, in proceedings by a railway company to condemn land, the defendant owner admitted in his pleadings the power to condemn, and that the land was necessary for the use of the company as sought by it, and that he had declined, as being inadequate, the amount offered him for the land by the company, thus leaving as an issue only the amount of the damages, he was entitled to the opening and conclusion.

**2. Same—Evidence of Value of Land.**

In determining the value of land forming part of defendant's farm and sought to be condemned, it could be shown that land half a mile distant, and as good as that to be taken, was then on the market, and the price at which it could be bought; but evidence that defendant, at an indefinite time, had been offered such land at a stated price was properly excluded.

**3. Same—Enhanced Value from Improvements Previously Made.**

Where a railway company seeks to condemn additional land, the enhanced value of the remainder of the tract resulting from improvements already made by the company can not be considered in offset against the damages.

**4. Same—Double Damages.**

A charge in condemnation proceedings authorizing the jury, in estimating the defendant's damages resulting from the consequent depreciation in value of the remainder of the tract, to consider the disfiguration of the tract, the inconvenience by reason of his being deprived of his timber for firewood, shelter for stock and grazing purposes, as well as the depreciation in the value of his farming land without the timber land so taken, was error as allowing double damages, since the evidence showed that such depreciation in value was the result of the other matters which the jury were to consider as independent elements of damage.

**5. Same—Value of the Land at Date of Taking.**

A charge is erroneous which is calculated to lead the jury to believe that, in estimating the damage where land is taken in condemnation proceedings, they may assess such damages with reference to the value of the land at some other date than the time of the taking.

APPEAL from the County Court of Austin. Tried below before Hon. JOHN P. BELL.

*J. W. Terry* and *Chas. K. Lee,* for appellant.

*J. S. Brewer* and *Wolters & Lane,* for appellee.

GILL, ASSOCIATE JUSTICE.—This was a proceeding brought by appellant to condemn 14.24 acres of appellee's land for the purpose of constructing thereon a reservoir and water tank for use in connection with a roundhouse and division terminals located by the appellant about one mile south of the town of Bellville, in Austin County. It was averred in the petition that appellant had offered appellee $700 as compensation for the land proposed to be taken and to cover such incidental damage as he might suffer to the remainder of his tract of land by reason of the condemnation. A trial before the commissioners appointed by the county judge resulted in an award of $2278.75. To this the appellant made timely objection and appealed to the County Court.. A trial by

jury resulted in a verdict and judgment for $900 for the value of the land taken, and $900 for damages to the remainder of the land.

The appellee admitted in his pleadings appellant's power to condemn for the purpose named, and that the land in controversy was necessary for the use of appellant in building and maintaining a reservoir and tank. It was also admitted in like manner that appellant had offered $700 in full of all damages; that appellee had refused to accept that sum, and affirmatively asserted the right to a much larger sum as compensation.

It thus appears that the only question at issue was the amount of compensation to which appellee was entitled for the damage suffered by him as a result of the exercise of a lawful right on the part of appellant. A jury has awarded appellee $1800 on conflicting evidence, and the trial judge has signified his approval of the verdict by refusing to disturb it. We make no further comment on the evidence than to say we do not feel authorized to disturb the judgment on the facts. In almost every case involving questions of value the estimates of witnesses differ more or less, and that feature is present in this case. It is evident that the jury accepted the estimate of no witness or set of witnesses, the verdict being for a less sum than would result from a calculation on the basis of the testimony of appellee's witnesses, and somewhat greater than would result from an acceptance of the statements of appellant's witnesses as exact.

The inquiry then is, (1) Does the record disclose error? (2) If it does, is it of such a nature as probably interfered with a just and lawful award?

By the third assignment of error appellant complains that the trial court erred in permitting defendant to open and conclude the argument before the jury. It is contended by appellant that the defendant below made no such admission in his pleading as would entitle him to the right. The nature of those admissions is disclosed in the statement of the case in the first part of this opinion. The position of appellant upon this question seems to be that the railway company, in a proceeding of this sort, is an actor upon every issue, including the amount of damages to be adjudged, and that the admissions of defendant would not have entitled the company to a judgment if no evidence were adduced, citing Sanders v. Bridges, 67 Texas, 92. In the case cited the rule is declared to be, that in order for a defendant to have the right to open and conclude, the admission must be of such a nature as to entitle plaintiff to a judgment if no evidence is offered by either party. The case was not one of condemnation, but it lays down the correct rule, and the difficulty remaining is to ascertain whether the rule should be applied to cases of this character, and if so, whether it has been complied with in this case.

In Mills on Eminent Domain, section 92, it is said, "the owner of the land has the affirmative of the issue as to value, and hence has the right to open and conclude, without regard to which party inaugurated the proceedings or prosecuted the appeal." This seems to us to be neces-

sarily true in the very nature of things, and the weight of authority outside the State seems to accord with this view. See Railway v. Day, 3 Texas Civ. App., 355, and authorities cited. It is to the interest of the railway company to minimize the damage consequent upon its act. It has the negative of the inquiry, and, while the rule might be made otherwise by legislation, the fact can not be changed either by legislation or judicial decision. Since we are cited to no decision by the court of last resort of this State holding otherwise, we might rest the decision of this question upon the authorities cited and reasons given above, and hold that the trial court committed no error in permitting the defendant to open and conclude. But the Court of Criminal Appeals of this State, during the time it had appellate jurisdiction of a certain class of civil cases, held that, under the peculiar wording of our statutes governing condemnation proceedings, the railway company, in a condemnation suit, was the plaintiff upon every issue, and that the defendant had not the right to the opening and conclusion in the absence of such admissions as were requisite to secure such right in any other case. It was held, however, that such an admission as appears to have been made in this case would entitle the company to a judgment, if no proof was offered by either party, and that consequently the right to open and conclude followed. Railway v. Waples, 3 Willson C. C., sec. 409. We think the action of the court might be upheld with good reason upon either ground.

The fourth assignment assails the action of the trial court in refusing to permit appellant to show by the appellee that he had been offered a tract of timber land within a half mile of his place equally good as that proposed to be taken, both as to soil and timber, for $30 an acre, same being situated on a public road leading from defendant's residence.

The facts show that appellee was a farmer and owned and resided on a tract of land containing about 134 acres; that deducting the part proposed to be condemned he would have 110 acres left; that the only timber land for his use for shade for his stock in summer and protection of them in winter, and to supply him with fencing and firewood, was the land in question. That the company proposed to condemn all but about two acres of this, and he would be thus left with a farm practically devoid of timber land. Much of the evidence tended to show that the presence of the timber as a part of the farm rendered the place much more desirable, and was a potent item affecting the market value of the remainder of the land. There was also evidence to the effect that the market price of the remaining acreage, after the timber land was taken away, would be thereby seriously reduced.

It is clear to us that the proximity and price of adjacent or contiguous timber land of a similar character was a fact proper to be considered by the jury in determining the extent to which appellee's lands would be depreciated by the loss of this particular tract. But in the effort to make this proof, it was not proper to show that at some indefinite time he had been offered timber lands at a particular price. The proper course

would be to show that such lands were then upon the market, and the price at which they were to be had. It is plain that if appellee's environment as to timber land was such that he would be able to supply the loss of his timber, or lessen the loss and inconvenience occasioned by parting with what he had, it was proper to show the fact, and .the cost to which he would be put in so doing, not as a distinct item of damage, but to be considered in determining to what extent the value of his land would be affected by the condemnation. The evidence, as offered, was not admissible, and the court did not err in excluding it.

Appellant sought to show by appellee that the roundhouse which had been located near appellee's land about a year prior to this effort to condemn had not been and could not be completed unless they procured the land in controversy, and the exclusion of the evidence thus offered is assigned as error. Since the right to condemn was not in issue, it could not have been material upon that point, and the only ground upon which it could possibly have been useful was to establish that the proposed tank was such an integral part of the improvements already made and proposed that the enhancement of values which had already accrued to the land should be considered in offset to the damage occasioned to the remainder of the tract by the taking of the land in question.

The evidence was undisputed that the roundhouse and terminals had already been located at that point a considerable time previous to the effort to condemn this land, and some of the evidence tended to show that the land of appellee and other adjacent lands had already been thereby enhanced in value; that the establishment of a reservoir and tank, while necessary to the maintenance of the roundhouse and terminals, was a mere incident thereto, and other evidence shows that other points for the establishment of the tank were considered before deciding to place it on appellee's land. It is neither shown nor contended that it was absolutely necessary to place it on appellee's land and nowhere else, though it may be conceded that that was the most feasible and convenient point. But had it been shown to be the only place at which it could be put, the fact remains that the enhancement in value (if any) by reason of the location of the other improvements had already accrued to the property. It was also shown that a tract of land had been theretofore purchased from plaintiff for tank and reservoir purposes, and it is fair to presume that the enhanced value due to the improvements was taken into consideration in agreeing upon the price.

It is well settled that benefits and enhancements already accrued by reason of previous improvements are not to be considered in offset when subsequent condemnations are sought. Compensation should be estimated by facts existing at the time the land is taken, which, in this case, would be at the date of the trial. Railway v. Ruby, 80 Texas, 176, and authorities cited. Under this rule the defendant was entitled to a judgment based on the value of his land as enhanced by previous improvements made by the company, and it follows that the evidence was not admissible for the purpose offered.

The part of the charge complained of in the sixth assignment was er-

ror against the defendant, there being no evidence that the location of the tank on the land in question would benefit, enhance, or injure the value of defendant's land in common with the community generally. Such evidence was present as to the effect of the location of the round-house and terminals, but not as to the tank.

The only other assignment which we deem it necessary to notice at length complains of the following paragraph of the court's charge: "In estimating the damages resulting to defendant by depreciation of the remainder of his land, you will consider the disfiguration, if any, of his land, the inconvenience resulting to him, if any, by reason of depriving him of the use and benefit of his timber for firewood, shelter for stock, and grazing purposes, as well as the difference, if any, in the value of his farming land without the timber land."

The objection urged against this charge is that it allowed double damages, and we are of opinion that the objection is well taken. The witnesses, in giving their opinions as to the extent to which value of the remaining acreage was affected, were properly permitted to give the facts upon which their opinion was based. In doing so they stated that the market value of the land would be depreciated, not because it would be less productive, but because the loss of the timber land would result in inconvenience in getting timber and wood, and that this fact and its loss for shelter and grazing purposes, as well as the disfiguration to the remainder, were considered in estimating its decrease in value per acre. It was thought that purchasers would be influenced by these very facts in fixing a value thereon. To allow, then, for these items and also for the difference in the value per acre would be to allow twice for the same items. See Railway v. Waples, supra, for what facts may properly be considered as affecting the value of the remaining land. As indicated in a former part of this opinion, it is impossible to determine what items of damage were considered by the jury in determining the amount to which appellee was entitled, and the error can not therefore be held to be harmless. It is affirmative error requiring the reversal of the judgment.

In view of another trial it is proper to comment upon the section of the charge complained of in the eighth assignment. It was the province of the jury to consider all the evidence admitted under the rulings of the court which in their judgment tended to establish the extent of the damages resulting from the proposed condemnation. But the section of the charge, while in one sense announcing this rule, was calculated to lead the jury to believe that they might assess the damages with reference to the value of the land at some other date than the time of taking.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*