### City of El Paso v. C. O. Coffin.

Decided June 7, 1905.

**1.—Condemnation Proceeding—Measure of Compensation—Charge—Repetition.**

Where, in condemnation proceedings, the main charge gave the measure of damages for taking property for public use, the giving of a special charge reciting the provision of the Constitution (art. 1, sec. 17), that no person's property should be taken without adequate compensation, and stating that defendant was entitled to recover full compensation, which is the market value of the property as defined in the main charge, was not error giving undue prominence to defendant's right to receive the full market value of the property.

**2.—Same—Measure of Damages and Value.**

Where land is taken by a city for a public park, the taking including all the land the owner has there, the measure of damages is the market value at the time of the taking, and in arriving at such value the jury may consider the conditions surrounding the property at that time, with reference to business and demand for property at that time existing, including any increase in development thereof that might then have been reasonably expected in the immediate future.

**3.—Same—Use of Other Land Connected by Agreement.**

Where, at the time of the taking, certain railroads had acquired other land near by and begun the construction of a union depot thereon, and the proceedings by them to acquire such land were separate from those by the city to condemn the land here in question, the jury could consider the construction of the depot and its effect on values in determining the value of defendant's land, and this, although prior to any of the proceedings, it had been jointly agreed between the railroads and the city that the former would secure land and establish the depot there, and the city would secure this land near by for a public park, to be thereafter maintained and kept up by the railroads.

**4.—Same—Jurisdiction of County Court.**

The provision of the Constitution (art. 5, sec. 16) denying the County Court jurisdiction of suits for the recovery of land does not render invalid the statute giving such court jurisdiction in condemnation proceedings.

Appeal from the County Court of El Paso. Tried below before Hon. Jos. U. Sweeney.

*D. Storms, Beall & Kemp* and *R. C. Walsh,* for appellant.—1. As this property was to be taken for public use, the court erred in excluding from the consideration of the jury the proceedings pending for condemnation of the same, as this would enable the jury to fix a prospective and fictitious value upon said property, caused by the erection of the union depot. Kerr v. South Park Com., 117 U. S., 924; Shoemaker v. United States, 147 U. S., 282; Dorgan v. Boston, 12 Allen, 223; Cobb v. Boston, 112 Mass., 181; Powers v. Railway Co., 33 Ohio St., 435; Buffalo Bayou Ry. Co. v. Ferris, 26 Texas, 588; Mills on Eminent Domain (2d ed.), secs. 173, 174; 2 Lewis on Eminent Domain (2d ed.), secs. 480, 501; Van Blaricum v. State, 7 Blackf., 209; Sater v. Plank Road Co., 1 Iowa, 393; Missouri Pac. Ry. Co. v. Hays, 15 Neb., 231; Eddings v. Seabrook, 12 Rich. L., 504; Levee Com. v. Harkleroids, 62 Miss., 807; Sedalia Ry. Co. v. Abell, 18 Mo. App., 637; Abbott v. S. P. Co., 109 Cal., 282, 41 Pac. Rep., 1099.

2. The measure of the defendant's damages was the market value of the property on the 6th day of October, 1904, under the then existing conditions, irrespective of the contingent and speculative effect upon the property that might afterwards result should a union depot be built. Dickerson v. Fitchberg, 13 Gray, 546; San Diego v. Neale, 20 Pac. Rep., 372; Sexton v. North Bridgewater, 116 Mass., 200; Burt v. Wiggleworth, 117 Mass., 302, and authorities above cited.

*M. W. Stanton,* for appellee.—1. The trial court correctly presented the law to the jury by charging them in specific terms that the defendant in this cause is entitled to recover of the City of El Paso the market value of his property on the 6th day of October, 1904, the evidence being in writing and undisputed that that was the date on which the property was in fact taken. Const. of Texas, art. 1, sec. 17; Gen. Law, 26th Leg., 105; Gen. Law, 27th Leg., 46; Charter of City of El Paso, sec. 148; Texas Western Ry. Co. v. Cave, 80 Texas, 137; San Antonio, etc., Ry. Co. v. Ruby, 80 Texas, 172; Allen v. Pacific Ry. Co., 25 S. W. Rep., 826; Galveston, etc., Ry. Co. v. Kinkaid, 60 S. W. Rep., 468; Sullivan v. Missouri Pac. Ry. Co., 68 S. W. Rep., 745; Davidson v.

Texas, etc., Ry. Co., 67 S. W. Rep., 1093; St. Louis, etc., Ry. Co. v. Hughes, 73 S. W. Rep., 976.

2. As the value of the property is to be assessed when taken, and the same was not taken until October 6, 1904, and as this proceeding is not a disadvantage that the jury could properly consider, the trial court did not err in excluding from the consideration of the jury this proceeding for the condemnation of the property. See authorities under preceding proposition; also, Rev. Stats. of Texas, arts. 4445-4475; Gulf, etc., Ry. Co. v. Bruggers, 59 S. W. Rep., 556; San Antonio, etc., Ry. Co. v. Hunnicutt, 44 S. W. Rep., 535; Eastern Texas Ry. Co. v. Eddings, 70 S. W. Rep., 98; Prochila v. Calvert, etc., Ry. Co., 72 S. W. Rep., 255; Boyer v. St. Louis, etc., Ry. Co., 97 Texas, 107, 76 S. W. Rep., 441; 2 Lewis on Em. Dom., secs. 463, 478-480.

JAMES, CHIEF JUSTICE.—On November 15, 1902, the city council of the city of El Paso enacted an ordinance which recited that the railway companies operating or building railroads into the city have agreed on plans for a union passenger depot, and that it was necessary that certain streets and parts of streets, and certain alleys, should be closed by the city, and others opened for the public use, and which ordained that certain streets, etc., be abandoned, etc., and granting the railway companies the right to close and use the same for railway purposes after certain abutting property shall have been acquired by said companies within the limits named, etc. Also, among other things, the city agreed and bound itself to acquire, by condemnation or otherwise, the north one-half of the west one-half of block 171, according to the map of Campbell's Addition to the city of El Paso, "provided the said Union Depot Company agrees to, and does, keep and maintain the same as a public park for the use and benefit of the people of El Paso." Also, that "the company hereafter to be organized for the purpose of maintaining the said proposed new union passenger depot, and each railroad now operating in the city of El Paso, shall have ninety days from and after the passage and approval of this ordinance within which to file with the city council their acceptance of the terms and conditions of this ordinance." Acceptance was shown to have been duly filed.

On December 3, 1903, the council adopted a resolution reciting that, by the ordinance of November 15, 1902, the city agreed to open a certain new street, and also to acquire, by condemnation or otherwise, the north half of the west half of block 171 of Campbell's Addition, being lots 12 to 17, inclusive, provided the Union Depot Company maintains the same as a public park, and whereas, in order to open up said street and park, it is necessary to take certain tracts of land, for which the city desires to make just compensation. Therefore resolved, That the city attorney be, and is, authorized to make certain offers to the owners for the property, and, in the event that the owners refuse to accept said offer, that he be, and is, hereby directed to institute proceedings against the owners so refusing, to condemn said land, as set forth in section 148 of the charter.

On August 4, 1904, an ordinance was enacted reciting that offers had been made to the owner of said six lots for same, which had been rejected, and the amount of compensation for same can not be agreed

upon, and whereas, proceeding for condemnation of same has been filed by the city attorney before the county judge in cause number 2274, styled The City of El Paso v. C. O. Coffin; now, therefore, such action by the city attorney is hereby ratified, and he is hereby authorized to prosecute such matter.

On September 12, 1904, a resolution was passed providing that, in the above proceeding, the mayor be authorized to pay to Coffin the amount of compensation awarded against the city by the commissioners in said cause, or deposit the money in said court subject to the order of defendant, and also the costs, and, in addition thereto, to deposit a further sum equal to the amount of the compensation awarded by said commission, and authorizing the mayor to execute a proper bond, conditioned for the payment of any further costs which may be adjudged against the city, either in said court or on appeal, and to take any further legal action for and on behalf of the city that he may deem proper, and that the city take immediate possession of the land sought to be condemned upon the payment or deposit of the money, and that a proper warrant be drawn for such sums.

The award of the commissioners was $3,747.66, and the proper deposit was made by the city on October 6, 1904. The defendant appealed, and on the appeal a jury awarded him $19,937.51, and from the judgment of the County Court the present appeal is prosecuted.

In addition to the facts involved in the foregoing statement is the fact, which we think is of some importance, that, prior to October 6, 1904, the date of the deposit, the lands for the site of the union depot had, by purchase, been acquired by the railway companies or the Union Depot Company. This was undisputed, and it also appeared, from uncontradicted testimony, that early in October, or, at least, a few days after October 6, 1904, work was begun by contractors grading the depot grounds. The testimony of Mr. Patton, who was connected with the Union Passenger Depot as engineer and superintendent of construction, was that he went to look over the ground, and decided where he would locate the building, and scaled the building according to the architect's plans. He did not know the exact time when the grading began upon the property. It began some time in the early part of October, but he could not give the exact date. During the month of October he cross-sectioned the ground in front of the building. The work of grading was begun by the contractor the next day after he did the cross-sectioning in front of the depot, and Mr. Powers was doing the grading. Mr. Look, a witness, testified that he could not give the exact time they began grading and began the work of constructing the depot, but it was soon after the 6th day of October, 1904.

We state the above as showing what the testimony showed the conditions to be on October 6, 1904, and that it appeared that the railways at the time had acquired title to their grounds, had plans for their depot building, had made contract for grading their grounds, and that the work of construction was in the act of beginning. The tract of land comprising the six lots sought to be condemned was separated from the depot grounds by a street. The taking in this case was of all the land defendant had in the locality.

The motion filed by appellee to dismiss the appeal for want of an appeal bond is overruled by force of the charter provision.

We are unable to see, considering the real issue in the case, anything calculated to affect the result in what is assigned as error by assignments numbers eleven, twelve, twenty-five and twenty-seven. The correctness of the judgment depends upon the correctness of the court's charge in reference to what the jury might consider in arriving at the market value of defendant's property on October 6, 1904, the date of the taking. Assignments are so framed as to question not only the charge in this respect, but the admission of testimony in conformity with the idea embodied in the charge, and these assignments, therefore, present and depend upon the same question.

The charge was as follows: "As to the law applicable to this case, you are instructed that the measure of damages to which defendant is entitled . . . is the full market value of lots 12 to 17, inclusive, in block 171, and you will return a verdict for the defendant in the amount so found by you, and return a verdict for the plaintiff for the land in controversy. In estimating the value of property taken for public use it is the market value of the property which is to be considered.

"You are instructed that the market value of property is a price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it, and in this estimate you will not consider that this proceeding is pending to take said property by condemnation. In determining the value of property, all of the uses to which it may be applied, and for which it was adapted on October 6, 1904, are to be considered, and not merely the condition that it is in at the time and the use to which it is then applied by the owner.

"You are further instructed that the damages can not be measured by the value of the property to the party condemning it, nor by its need of this particular property. You are further instructed that, in ascertaining the market value of said property on the 6th day of October, 1904, you should consider the condition of the property at that time, its locality with respect to business, and demand for property at that time, and any increase or development thereof that might have been reasonably expected in the immediate future at that time. In ascertaining what the market value of the property involved in this controversy was on the 6th day of October, 1904, you should consider the conditions then existing at said time, but you would not be authorized to consider speculative or merely possible contingencies, and you would not be authorized to consider any evidence as to speculative values."

The court also gave a special instruction requested by defendant, which stated that, under the statutes of this State, when the whole of a person's real estate is condemned, as in this proceeding, the damages to which he is entitled is the market value thereof in the market in which the same is located, and further, "that the Constitution of the State of Texas, article 1, section 17, provides that no person's property shall be taken for or applied to a public use without adequate compensation being made, unless by consent of such person, and that defendant is entitled in this proceeding to recover full compensation, which is

the market value of said property, as the said term is defined to you in the general charge of the court, and this instruction, in reference to the value of the property, you will take and consider in conjunction with the general charge of the court upon market value."

In reference to the last named special charge, it is assigned as error that the reference to the constitutional article was erroneous, because the court had already instructed the jury in reference to the same matter, and the reference to the Constitution on the subject was calculated to unduly impress the jury with the fact that defendant was to receive the full market value of the property, by repetition of the injunction contained in the general charge. This, we think, can not be regarded as error. A court may commit error to the prejudice of a party when it, by its charge, gives undue prominence to a fact or to an issue. But we have yet to learn that a rule or principle of law, which a jury is bound to observe, can be too well impressed upon them.

The first assignment is without merit. The charge of the court must be read or construed as a whole, and the jury were expressly told in a special instruction that defendant was entitled to recover the market value of the property on the 6th day of October, 1904, under the instructions as to market value given in the general charge. The main charge was the same in effect, hence the complaint that certain paragraphs in the main charge did not state the time when the value was to be estimated, being silent thereon, was calculated to make the time of the trial the basis for estimating the damages, is not well founded.

There are many assignments complaining of the main charge, based upon the idea that it permitted or authorized the jury to consider any increase or development of the property by the construction of the union depot, or, as otherwise expressed, was calculated to induce the jury to believe that they could fix a valuation upon the property contingent upon the construction of such depot upon it, and that said property might be used for storehouses after the completion of the depot, and also expressed thus: Because it authorized them to consider values attaching to said property by reason of the building of the union depot upon it.

The depot, however, was not to be built upon this property. The force of appellant's proposition lies in the charge authorizing the jury to take into consideration the construction of the depot in the immediate vicinity of this property, as an element entering into the market value of this property on October 6, 1904. It must be admitted, from a fair reading of the charge as above copied, that it does nothing more than instruct the jury, in arriving at the market value on October 6, 1904, to consider the conditions surrounding the property at that time, the charge specifying its locality with reference to business, and demand for property at that time existing, including any increase or development thereof that might then have been reasonably expected in the immediate future. This is the correct rule, as held by this court in Sullivan v. Railway Co. (29 Texas Civ. App., 429, 68 S. W. Rep., 745); Allen v. Railway Co. (25 S. W. Rep., 826).

We see no reason why, under the proven facts and circumstances of this case, the jury were not warranted in concluding that the comple-

tion and use of this depot adjoining the property in question were, on October 6, 1904, assured facts to occur in the immediate future, and based on conditions then in progress pointing directly to such completion and use, in such manner as to directly have effect upon the market value of the property in question at that time. To have excluded such consideration, and to have confined the jury to the condition the property was in at the time, and the use to which it was then applied by the owner, independent of its value as then affected by such consideration, would have been error.

We think there was no error in the charges on the measure of damages as ordinarily controls in this class of cases. But a question arises, which is strongly and ably urged by appellant's counsel, and which grows out of the circumstance as counsel put it, that the land of appellee was a part of the land designated to be taken and condemned in carrying out the project of a union depot in the city of El Paso, and to give safe and convenient ingress thereto and egress therefrom, the parts to be done by the city and by the railway companies and Union Depot Company, respectively, being corelative and interdependent, as evidenced from the ordinance. We understand the contention to be, in effect, that the condemnation in question should be viewed as if this property and the ground acquired by the railways for the depot were being simultaneously, or by one proceeding, condemned for depot purposes. Either this, or that the taking of appellee's lots was a part and parcel of the original plan of improvement, as from the ordinance it will be seen that the building of the depot and the opening of the street and the park were dependent and conditioned one upon the other, and the ordinance, and the acceptance of same, constituted an agreement binding on all.

It is held, generally, in cases presenting the appropriate facts, that, where a person's entire property is included in one general proceeding of condemnation for a particular purpose, it is not permissible to consider that purpose, or the results thereof, in estimating the owner's compensation. The reasons for this rule are apparent. To permit it would be to take into consideration the condemnation proceeding itself as a factor, which is not allowed. Further, it is evident, in such a case, that the taking, and the effect on the value from such taking, would be concurrent, and such increase would not exist when the taking occurs. The person's property is taken, and is absorbed in the purpose for which it is taken, and, to allow him a compensation based on the value which the property would have had if not taken, would be giving it a status it could not possibly have had in the very nature of the act. The reasoning of the Supreme Judicial Court of Massachusetts is appropriate here, though not its decision, as that was controlled by a statute: "Its real value for use is not increased until the change in its surroundings comes. If the expected improvement involves the taking of the land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the probability of ever using it under improved conditions." (May v. City of Boston, 32 N. E. Rep., 902.)

Such, we think, would be the case here if this property and the other property acquired as a depot site were being condemned by the rail-

way companies simultaneously in a common proceeding. But the property is not being condemned by the railway companies, nor is it being condemned for its purposes. Furthermore, at the time at which the law requires this property to be valued, the companies had already acquired the property to be used for their purposes. The case of the city could have no better footing than would have been the case had the railway companies, after acquiring the grounds for the erection of their depot, proceeded to condemn this property as additional grounds. The case of Railway v. Brugger (24 Texas Civ. App., 367, 59 S. W. Rep., 556) is, we think, an authority on this state of case. If not directly in point, the decision is not consistent with any other theory than that the steps already taken by the railway companies towards establishing their depot on the adjoining site, insofar as they indicated with reasonable probability such establishment in the immediate future, should have been considered in fixing the value of the plaintiff's property on the date of its taking. And such is the necessary result of the rule stated in Sullivan v. Railway Co. (68 Texas, 745). (See, also, In re Condemnation of Certain Land, 33 Atl. Rep., 522.)

It is true the original ordinance, the provisions of which were accepted by the railway companies, contemplated, and we shall say stipulated, for the acquisition of defendant's land by the city for a public park, and, when acquired, that it should be kept in order by the said companies or the Union Depot Company. This, we think, is not a factor in respect to the rights of defendant. His constitutional right in this involuntary proceeding, as further defined by our decisions, was to be awarded the value of this land at the time it was taken, and this time is not to be referred back to a previous time, when the taking was first contemplated or decided upon by the city.

The assignments of error do not establish error, and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

The appellant contends that the County Court can have no jurisdiction of condemnation cases, by reason of section 16, article 5, of the State Constitution, which provides that said court shall not have jurisdiction of suits for the recovery of land. Section 8, article 5, vests the jurisdiction of all suits for the trial of title to land in the District Courts, and we think the reference to suits for the recovery of land in section 16 meant suits for the trial of title to land. The question was before the Court of Appeals, and it held that the statute giving the County Court jurisdiction over condemnation cases was not unconstitutional, for reasons expressed in the opinion found in Gulf, C. & S. F. Ry. Co. v. Tacquard (3 Willson, Civ. Cas. Ct. App., sec. 141). The question does not appear to have been directly raised and decided in the Supreme Court, but that court has made rulings which are entirely inconsistent with the correctness of the position assumed by appellant. (See Railway v. Poindexter, 70 Texas, 98, 7 S. W. Rep., 316; Ackerman v. Huff, 71 Texas, 317, 9 S. W. Rep., 236; Galveston Wharf Co. v. Railway Co., 72 Texas, 454, 10 S. W. Rep., 537.) The question being a constitutional one, and plainly fundamental, it could not have

been overlooked in the above and other cases which involved it.  We can not consent to certify to the Supreme Court a question thus practically settled, and one with regard to which no member of this court entertains any doubt.

The other questions referred to in the motion for rehearing are, we believe, correctly disposed of by the opinion filed.

The motion is overruled.

*Overruled.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.