Charles R. HALEY, Jr., et ux., Appellants,

v.

The STATE of Texas et al., Appellees.

No. 6829.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 8, 1966.

King, Sharfstein & Rienstra, Weller, Wheelus & Green, Beaumont, for appellants.

W. G. Walley, Jr., Beaumont, for appellees.

PARKER, Justice.

Exercising its right of eminent domain, the State of Texas, acting by and through the Commissioners Court of Jefferson County, Texas, instituted condemnation proceedings to take for highway purposes all of one body of land comprised of .58 acres called Parcel No. 53–A and .811 acres called Parcel 53–B belonging to appellants, Charles R. Haley and wife, Thelma R. Haley, subject to a lease by them to the appellant, Billups Petroluem Company. The title taken by appellee, The State of Texas, is that of a fee simple title. The date of taking is agreed to be February 14, 1964. The parties will be referred to as condemnor and condemnees.

The issues submitted to the jury and the answers thereto are as follows:

"SPECIAL ISSUE NO. 1

"From a preponderance of the evidence, what do you find was the market value of the tract of land and improvements of Charles R. Haley and wife, Thelma Haley and Billups, condemned for highway purposes described as Tracts 53–A and 53–B in the evidence before you on the 14th day of February, 1964?

"Answer by stating the amount in dollars and cents.

"ANSWER: $65,000.00

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the removal of the railroad right of way on parcel 53–B, as described in the evidence admitted before you, resulted from the proposed highway improvement for which the subject tract of land is being condemned?

"Answer 'yes' or 'no'.

"ANSWER: Yes

"If you have answered Special Issue No. 2 'yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that any portion of the sum you have found in answer to Special Issue No. 1 constituted enhancement or increase in value of the land in question resulting from the said removal of said railroad right of way, if you have so found?

"Answer 'yes' or 'no'.

"ANSWER: Yes

"If you have answered Special Issue No. 3 'yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 4

"What do you find from a preponderance of the evidence to be the amount of said enhancement or increase, if any?

"Answer by stating the amount in dollars and cents, or answer 'none'.

"ANSWER: $25,000.00"

Judgment was entered that the owners take $40,000.00 as compensation, the enhancement in value of $25,000.00 being allowed as an offset to the $65,000.00 market value of the tract at the time of taking. Such railroad track was removed in late 1960 or January 1961.

The condemnees have appealed.

The brief of appellee expresses "serious doubt as to whether the district court had jurisdiction of the subject matter under the terms and provisions of Article 3269, Revised Civil Statutes of Texas of 1925, as amended, upon which the jurisdiction of the District Court must rest." This suit was instituted in the district court of Jefferson County, Texas, by Charles R. Haley, Jr., and wife. Their original petition was in trespass to try title as to the entire tract of land involved here and for declaratory judgment, such action being brought against Billups Petroleum Company, not against the State of Texas. The pleadings of the Haleys and Billups Petroleum Company alleged that Billups had leased the land in controversy from the Haleys on June 18, 1951, at which time the Haleys owned all the land here involved burdened with an easement of a railroad on Tract B, being the west 50 feet of the railroad easement, approximately 700 feet long north and south. The provisions in the lease presented problems as between the Haleys and Billups as to what compensation each would be entitled in the event the State condemned the entire tract for highway purposes as it was seeking to do in the County Court at Law of Jefferson County, Texas. Such condemnation suit had been filed in the County Court at Law. The judge of said court had appointed commissioners. It was alleged by the Haleys that since issues of title were involved as between the Haleys and Billups Petroleum Company, of which the County Court at Law lacked jurisdiction, the State "is made a party here in order that all issues including value of the property taken under condemnation can be determined in this suit." The Haleys alleged they were entitled to all compensation awarded in a proper condemnation proceeding. The State filed answer of general denial to the plaintiffs' petition with a cross-action against the Haleys and Billups, alleging that such cross-action was instituted for the purpose of condemning such land which was necessary for highway purposes; that because "of the diversity of adverse claims of the cross-defendants in and to the title and possession of said land, it is impossible to agree, compromise or settle with said cross-defendants upon the amount to be paid for said land, or for the damages" etc., praying for condemnation of the land. Billups filed answer to the cross-action of the State. Thereafter, the Haleys and Billups stipulated that the fee title to the land in controversy between them for the purposes of trial in this suit was owned by them jointly, and that the sole issue to be tried "in this case would be the value of the improvements on said property and the value of the lands taken by the State of Texas under condemnation in this cause." This stipulation referred to a written compromise and settlement such parties had executed.

The district court had lawful and proper jurisdiction of the causes of action by virtue of Article 3269, Vernon's Ann.Civ.St. By the above stipulation between the Haleys and Billups the district court did not lose jurisdiction. Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S.W. 762, 763 (1924); Haginas v. Malbis Memorial Foundation, 163 Tex. 274, 354 S.W.2d 368, 371 (1962); Magee Heirs v. Slack, 152 Tex. 427, 258 S.W.2d 797, 803 (1953).

Under such pleadings the State admitted fee simple title in the subject property to be in the condemnees. At one time a railroad right of way burdened Tract 53–B. It is undisputed the railroad abandoned such easement in December 1960 or January 1961. This right of way was 100 feet in width east and west, running in the direction of north and south. At the time of the taking of this land for highway purposes, February 14, 1964, this tract of land was bounded on the west by State Highway 69, which was a four-lane highway. On this land Billups had a filling station. Highway 69, sometimes called Eleventh Street, was a heavily travelled street or highway. Admittedly, the removal of the railroad track from Tract 53–B sometime late in 1960 or January 1961 enhanced the value of the subject property. As indicated, the State sought to and did obtain a $25,000 offset upon

their alleged responsibility for the removal of the railroad track resulting in the enhancement of the value of the entire tract. Condemnees, the Haleys and Billups, have appealed contending they were entitled to judgment for the full value of the property at the time of taking as found by the jury, to-wit: $65,000.00.

■ Condemnees contend there is no evidence from which the jury could believe that the removal of the railroad right of way on Tract 53–B resulted from the proposed highway project. Further, they contend it was error for the trial court to overrule their motion to disregard the answer of the jury to special issue No. 2 and their objection to submission of special issue No. 2. Condemnees contend special issues 2, 3 and 4 should not have been submitted because as a matter of law there was an unreasonable delay by condemnor in taking condemnees' property subsequent to the abandonment of the railroad right of way. Further, condemnees urge the undisputed evidence shows the relocation of the T&NO tracks was not due solely to the highway program but was due to the fact that T&NO Railroad Company desired to use the Santa Fe track. On these "no evidence" points, the evidence favorable to condemnees is controlling.

■ The market value of the land and improvements of condemnees on February 14, 1964 was found to be $65,000. Special Issues 2, 3 and 4 are attacked by condemnees-appellants. In a condemnation suit the general principle is the owner has a constitutional right to the market value of the property taken as of the date it is actually taken. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (Tex.Comm.App., opin. adopted); City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808. An exception to this rule is that the condemnor is not obligated to pay for an enhancement in value of the property occurring as a result of a public improvement made before the date of taking, provided certain facts appear as set forth in City of Dallas v. Shack-

elford, 145 Tex. 528, 199 S.W.2d 503 (1947); State v. Willey, 351 S.W.2d 904 (Tex.Civ. App.1961); State v. Vaughan, 319 S.W.2d 349 (Tex.Civ.App.1958); City of Dallas v. Rash, 375 S.W.2d 502 (Tex.Civ.App. err. ref. n. r. e.); City of El Paso v. Coffin, 40 Tex.Civ.App. 54, 88 S.W. 502; Rayburn, Texas Law of Condemnation (1960) § 156 (2).

■ T&NO Railroad Company had tracks on and was using the railroad easement involved on November 19, 1958. On that date T&NO and Santa Fe executed an agreement, subject to approval by the Interstate Commerce Commission whereby T& NO would operate its trains and cars over the Santa Fe line from Beaumont to Loeb by provision of a new rail and connection at Loeb in Hardin County, thus making it possible to remove the existing T&NO line from Beaumont to Loeb. The State of Texas and Jefferson County were not parties to that agreement. There is no evidence that the State in any manner encouraged or brought about such agreement between the two railroad companies. There was no new rail line to be laid by T&NO in Jefferson County. On July 6, 1960, Commissioners Court of Jefferson County adopted an agreement dated May 20, 1960, by and between the State of Texas, acting by and through the State Highway Engineer. This agreement stated it was not to become effective unless the Interstate Commerce Commission approved the agreement between T&NO and Santa Fe above described. The obligations of T&NO were limited to providing a new rail line in Hardin County, acquiring easements, licenses and other instruments necessary for the new rail line in Hardin County, providing for safety signals in Hardin County, removal of trackage in Hardin and Jefferson Counties, reimbursement to the State for work required to adjust the highway embankment in Hardin County and conveyance to the State by deed or other instrument, without warranty of title, express or implied, of all T&NO's rights, titles and interest, except trackage, on portions of its

right of way in Jefferson County. Upon abandonment of that part of the easement in Jefferson County involved in this suit, the T&NO had nothing to convey to the State. Jefferson County agreed to pay T&NO the sum of $32,235.00 for such quit claim deed. Jefferson County stipulated that the State was not a party to the above provisions for payment to T&NO except to the extent that the State was a third party beneficiary.

Unquestionably, there was an enhancement in value of this tract of land in December 1960 or January 1961 when the T&NO removed its tracks from Tract 53–B and abandoned its easement thereon. In condemnees' Exhibit D–2 dated May 20, 1960, it is recited that the State and Jefferson County had executed a contractual agreement dated August 19, 1957 whereby Jefferson County would acquire right of way in the name of the State within Jefferson County necessary for the improvements on US Highway 69. There is no evidence of the contents of such agreement. Exhibit D–2 also recites:

"WHEREAS, T&NO and Santa Fe have executed an agreement dated November 19, 1958, subject to approval by the Interstate Commerce Commission, whereby T&NO will operate its trains and cars over the Santa Fe line from Beaumont to Loeb, by provision of a new rail line connection at Loeb, from point of switch on the Santa Fe line at Santa Fe Station 545+83 approximately; thence crossing US Highway 69 at Highway Station 67+55 to the T&NO line at T&NO Station 535+72.3, thus making possible the removal of the existing T&NO line from Beaumont to Loeb; and

"WHEREAS, the State plans the further development and improvement of US Highway 69 in Jefferson County adjacent to the existing T&NO line, and in Hardin County in the vicinity of Loeb, making desirable the acquisition of T&NO right of way, no longer needed by T&NO, in the event of the removal of

said T&NO line between Beaumont and Loeb, by the State for right of way for the planned highway improvements;"

The Santa Fe and T&NO agreement of November 19, 1958 was not offered in evidence. The above phrasing does not designate for immediate acquisition, by purchase or condemnation, of condemnees' property along with other property as in a simultaneous and in a common proceeding. In 1964 when the State and Jefferson County decided to acquire condemnees' property by condemnation, this property had already been benefited and enhanced in value as the result of the abandonment of the railroad right of way by the T&NO as a logical result of an entirely separate and disassociated proceeding from any highway plan. In Exhibit D–2 all that T&NO obligated itself to do was to provide for a new rail line connection in Hardin County, move its automatic grade crossing and all equipment where US Highway 69 crossed the railroad about 4,000 feet north of condemnees' land, removal of existing trackage and other surface facilities from approximately 9,000 feet of right of way including the 720 feet of condemnees' land. Under Article 4 of D–2, Jefferson County agreed to pay T&NO $32,235.00, "such sum being the value of all the rights, title and interest of T&NO, except trackage and other surface facilities" to portions of its right of way, "said sum to be paid by Jefferson County to T&NO upon delivery to and acceptance by the State of proper instruments conveying all rights, titles and interest of T&NO therein." Such a quit claim deed from T&NO to Jefferson County was executed on March 20, 1962. By letter of March 23, 1962 from T&NO to the County Judge of Jefferson County specific reference is made to every provision of Article 4 of D–2 stating:

"Under Article 4 of the above agreement Jefferson County agreed to pay T&NO the sum of $32,235.00 for its right, title and interest to certain right of way upon delivery to and acceptance by the State of proper instrument."

Payment was made by Jefferson County of such sum. Delivery of the deed was made.

This quit claim of T&NO's rights, title and interest is to some 9,000 plus feet of right of way with no evidence offered as to any title T&NO had. As to condemnees' land T&NO had nothing to convey. As to other portions of said right of way T&NO may or may not have had fee title.

Robert Hawn, a highway engineer employed by the Highway Department, testified he was familiar with a schematic of proposed improvements of Highway 69 prepared by the Highway Department in 1959 as being a revised schematic. This schematic was approved by the City of Beaumont but not by Jefferson County or the State of Texas. This is identified as Exhibit D–7. It indicates that the State planned to use some of the land within T&NO's right of way in the construction of the improvement of Highway 69. Hawn testified that for a highway plan to be a fixed project a minute order of the district engineer was necessary. No minute order or final plan is in evidence. It had no probative force on the problem of abandonment of the railroad right of way or the cause thereof. Hawn did not testify, nor did anyone else, that the State persuaded or even requested T&NO to abandon its right of way. It cannot be inferred from his testimony or any exhibits that such abandonment was the logical consequence of, or activated by, any highway plan of the State of Texas. It is undisputed that condemnees' property was never designated for immediate acquisition by fixed date by any authoritative action by the State Highway Commission or Jefferson County until the taking on February 14, 1964. No explanation or justification for delaying such action from about the 1st of January, 1961, until some three years later is in evidence. There is no probative evidence of the taking of any other property required in any proposed plan of improvements of Highway 69. Under this record, condemnees were entitled to be paid for the entire market value of their land on the date of taking, including the enhancement in value resulting from the abandonment of the railroad right of way. The value is not to be referred back to a previous time when the taking was first contemplated as "desirable" in the future. The decisions referred to hereinbefore are directly in point supporting these holdings.

■■■ Condemnees contend that condemnor was not entitled to the benefit of any enhancement in value resulting from the removal of the railroad right of way because condemnor had no pleadings with reference to these defensive issues. The sole issue raised by the pleading of the State was the market value of condemnees' land as of February, 1964. In such pleading part of the prayer is that the "value of the land be assessed," and for such other and further relief " * * * · it may show itself entitled." This pleading was not amended or supplemented. Throughout the trial condemnees timely objected to each and every offer of evidence concerning enhancement in value or benefit to condemnees' land by reason of the abandonment by the railroad of its easement in late 1960 or early 1961. Among the objections was the objection that the State had no pleadings alleging it was entitled to a reduction in the compensation to be paid for condemnees' property to the extent of such enhancement in value. Condemnees objected to the submission of special issues 2, 3 and 4, filed their motion to disregard these special issue jury findings and moved for judgment upon the finding on special issue No. 1, disregarding the jury findings in response to special issues 2, 3 and 4. All of such objections and motions were overruled. Under such circumstances, Rule 279, Texas Rules of Civil Procedure, prohibited the submission to the jury of special issues Nos. 2, 3 and 4 or evidence in support of them. It follows that the findings of the jury thereon cannot support the judgment decreasing the recovery by condemnees from $65,000 to $40,000. Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208

S.W.2d 919 (1948). Evidence offered by the State to prove enhancement of value as a basis for reducing and offsetting the compensation to be paid condemnees was improperly admitted in the absence of a pleading to support such issues. Burton Lbr. Corp. v. City of Houston, 45 Tex.Civ.App. 363, 101 S.W. 822, err. ref.; Dickens County v. Dobbins, Tex.Civ.App., 95 S.W.2d 153; 22 Tex.Jur.2d 296, Eminent Domain, § 188 and cases cited.

 The quit claim deed from T&NO to Jefferson County dated March 20, 1962 when offered in evidence by condemnor was for the limited purpose "of showing that the railroad, not that it conveyed any interest to the State of Texas, but the fact that through these instruments the abandonment of the railroad took place, it gave rise to the enhancement of the value of that land, and that is our contention," with the statement made that the requested instruction of condemnees that the jury be instructed the deed conveyed no interest should be overruled. The trial court did finally overrule such requested instruction. The witness Hall, who was testifying as to values, stated he had seen this quit claim deed and knew that the landowner had no title to the abandoned right of way. From his conclusion as to condemnees' title, he placed a very nominal value on condemnees' ownership of that portion of the tract of land. Thus, the impression was given to the jury that to pay condemnees for this portion of said land would be a double payment. Clearly, it was prejudicial. Such an instruction as requested should have been given the jury.

▪ Condemnees also contend it was error for the trial court to provide in its judgment that interest on the $40,000 stopped when paid by condemnor even though appellants-condemnees would have lost their right to appeal had they withdrawn such sum. This point of error is without merit and is overruled. Condemnees' controlling points of error have been passed on. Other

points of error are not passed on because no useful purpose would be served.

The judgment of the trial court is reformed so that Charles R. Haley, Jr., and wife, Thelma R. Haley, Billups Petroleum Company and Billups of Beaumont, Inc., in accordance with stipulation among themselves, recover of and from the State of Texas through the Commissioners Court of Jefferson County, Texas, $65,000.00, together with interest on $25,000.00 thereof only at the rate of 6% per annum from the 14th day of February, 1964, until paid with the other provisions of the judgment of the trial court unchanged.

As so reformed, the judgment of the trial court is affirmed.