**914**

CITY OF HOUSTON, Appellant,

v.

Joe BARSHOP et al., Appellees.

No. 139.

Court of Civil Appeals of Texas.
Houston (14th Dist.).

Sept. 4, 1968.

Rehearing Denied Oct. 9, 1968.

William A. Olson, City Atty., Joseph G. Rollins, Donald K. Shipley, Senior Asst. City Attys., Houston, for appellant.

W. Ervin James, Hofheinz & James, William H. White, William A. Paddock, Reynolds, White, Allen & Cook, Houston, for appellees.

SAM D. JOHNSON, Justice.

This is an appeal from judgment in a total taking condemnation action based on the answer of the jury to a single issue as to the value of the acreage acquired. The condemnor-appellant is the City of Houston who acquired this property as part of the

Houston Jetero International Airport. The condemnee-appellee, Joe Barshop, was the owner of 52.66 acres involved which will sometimes hereafter be referred to as the "Barshop tract." The jury determined the market value on July 7, 1964, the date of taking, to be $168,152.00.

Appellant's basic contention is that the court erred in admitting opinion evidence as to the value of the subject property based on the enhancement of its value due to the influence of prior property acquisitions by the City of Houston for these same airport purposes.

The pertinent events and their dates were, in order, as follows: sometime prior to November 6, 1957, a group of private citizens working in the interest of the City of Houston proceeded to acquire by purchase from a number of owners some 3,125 acres of land. It was their intent to subsequently convey the land so acquired to the City for the latter's use in constructing an airport. They later incorporated themselves as the Jetero Ranch Company and thereafter, on November 6, 1957, entered into an agreement for the sale of the acreage so acquired to the City of Houston. On April 2, 1958, the City purchased the property that had been acquired by the Jetero Ranch Company. This initial tract had a fractional outstanding interest and consisted of some 3,125 acres which was more than half of the total acreage ultimately needed for the airport. The Barshop tract was not included in this 3,125 acres originally purchased from the Jetero Ranch Company.

In February, 1959, the 52.66 acre Barshop tract sold to Select Home Builders at an enhanced value, $79,000.00, and on April 20, 1960, Select Home Builders sold the tract to Barshop at an enhanced value, $90,000.00.

On October 11, 1960, an ordinance was passed by the City of Houston authorizing an offer of $63,192.00 for the Barshop tract and providing that if such offer not be accepted within five days, that condemnation proceedings should be brought. On October 26, 1960, the ordinance was passed designating the area within which the airport would be located which encompassed an area substantially in excess of that ultimately determined to be needed for the airport. This ordinance included the Barshop tract.

On October 11, 1961, the initial master plan for the airport was adopted by the City. This comprehensive master plan contained, among other things, the general plan for the boundaries of the airport and the property to be acquired and added to the original acreage purchased from the Jetero Ranch Company. The Barshop tract was within the airport boundaries shown in the master plan.

On June 18, 1963, the City's first offer to purchase the Barshop property was made. On September 20, 1963, the condemnation proceedings to acquire the Barshop tract were instituted. The Barshop property was ultimately taken on July 7, 1964, when the amount of the award of the Special Commissioners, $80,000.00, was deposited into the registry of the court by appellant pursuant to Art. 3268, Vernon's Ann.Civ. St.

Most of the additional property that was required to be obtained by condemnation was obtained prior to the acquisition of the Barshop tract. A substantial amount remained to be acquired subsequent to the date of taking of the Barshop acreage, however.

At trial, the only testimony allowed by the court and heard by the jury relative to the value of the Barshop tract was that testimony based on the assumption that the property was situated adjacent to the Jetero airport. The evidence that was admitted pertained to the uses to which the Barshop tract could be put by virtue of its proximity and contiguity to an existing and operating airport facility.

The basic question to be determined is whether the condemnee was correctly permitted to take advantage of the enhancement in value of his tract due to the Jetero Airport itself. Counsel for the City, by

Motion in Limine and by proper objections and Bills of Exception, unsuccessfully sought to exclude the enhancement in value. Appellant's proffered testimony of the Barshop tract unaffected by enhancement was excluded and appellant's requested jury instructions excluding enhancement were denied. It is not disputed that there was substantial enhancement that inured to the benefit of the condemnee.

■ The Supreme Court has made clear that "In a proper case under the facts condemnor should not have to pay the increased value of property taken, due to the public improvement itself * * *." City of Dallas v. Shackelford, 145 Tex. 528, 199 S.W.2d 503, 505; State v. Vaughan, (Tex. Civ.App.), 319 S.W.2d 349, no writ hist.; Rayburn, Texas Law of Condemnation, Sec. 156(2), p. 451; 1 Orgel, Valuation under Eminent Domain, (2d Ed.1953), Sec. 98, p. 425. In addition, "It is held generally, in cases presenting the appropriate facts, that, where a person's entire property is included in one general proceeding of condemnation for a particular purpose it is not permissible to consider that purpose, or the results thereof, in estimating the owner's compensation." City of El Paso v. Coffin, 40 Tex.Civ.App. 54, 88 S.W. 502, 505, writ dismd.

■ It is equally clear, however, that if a project is subsequently enlarged so as to embrace additional property, such additional property as is involved in the supplemental taking is entitled to the benefit of any enhancement in value which resulted from the original taking. Jahr, Em. Domain (1953), Sec. 94, p. 131. Orgel summarizes the rule: "While the decisions of the courts are not in accord on the question whether an enhancement in value caused by the very improvement for which the land is taken should be considered, they would probably all agree that an increase in value of land resulting from a prior and separate improvement should be allowed." 1 Orgel, Sec. 104, p. 443; State of Texas v. Willey, Tex.Civ.App., 351 S.W.2d 900, 902.

Appellee places his reliance on three cases: City of Dallas v. Shackelford, supra; State v. Willey, supra; and Uehlinger v. State, 387 S.W.2d 427 (Tex.Civ.App., 1965), writ ref., n. r. e. In the Shackelford case the City of Dallas authorized the establishment of a public market. On December 10, 1941, the City Council adopted a resolution reciting this fact but further stating that the recent declaration of war rendered it inadvisable to embark on the full realization of the public improvement. The resolution designated a ten-block area that included Shackelford's lots as the site for the public market but provided that, "* * * * presently the property that should be acquired, and within the immediate future, is embraced in * * *", a lesser two-block square area that did not include Shackelford's lots. The project enhanced the remaining lands in the ten-block area including the Shackelford lots. Almost three years thereafter the city decided to condemn the Shackelford lots and filed the condemnation proceedings.

The Supreme Court said, "* * * In a proper case under the facts condemnor should not have to pay the increased value of property taken, due to the public improvement itself; but, under the facts of the instant case, we do not think the owner should be deprived of the same benefits he would have enjoyed if the land had not been taken,—*in view of the fact that there was no definite purpose manifested by the City to take it until in the fall of 1944."* "* * * *If appellees' property had been designated in the resolution of December 10, 1941, for immediate acquisition, by purchase or condemnation, along with the other properties so designated for that purpose, doubtless the condemnation could be considered simultaneous and in a common proceeding; but such was not the case."* (Emphasis added), City of Dallas v. Shackelford, supra.

The Court in Shackelford emphasizes the condemnor's original action in 1941 did not make it clear when, if ever, the Shackelford lots would be taken, that the City en-

tered upon only a partial realization of the improvement, that there was no definite purpose manifested by the City to take the Shackelford lots until some later, unspecified date, and the City went ahead with the establishment of the market without using or taking that property. The Court emphasizes that if appellee's property had been designated in the original resolution "* * * for immediate acquisition, by purchase or condemnation, along with the other properties so designated for that purpose, doubtless the condemnation could be considered simultaneous and in a common proceeding * * *." City of Dallas v. Shackelford, supra.

■ In the instant case the Barshop tract was first sought to be purchased by the Jetero Ranch Company. It was specified in the ordinance of October 11, 1960, for acquisition. It was encompassed in the ordinance of October 26, 1960. It was included in the initial master plan for the airport. At no time does the Barshop tract appear to have been outside the contemplation, design or plans for inclusion in the airport complex. The City of Houston did *not* determine to acquire property outside that originally designated in the master plan. The City of Houston did *not* construct an airport on a smaller area and then enlarge it at a later date. We do not believe the Barshop tract can be considered to be "additional property" involved in a "supplemental taking."

In State v. Willey, supra, the State first acquired land for a conventional highway. Seven years later additional land was condemned for an overpass over that highway in order to make it conform to interstate standards imposed subsequent to the original taking. The condemnation of the additional property was there considered to be a second and subsequent taking because the land later acquired was not originally designated "for immediate acquisition by purchase or condemnation." See also Haley v. State, 406 S.W.2d 477 (Tex.Civ.App., 1966), writ ref., n. r. e.; Gulf, C. & S. F. Ry. Co. v. Brugger, 24 Tex.Civ.App. 367, 59

S.W. 556, (1900), no writ hist.; City of El Paso v. Coffin, supra; McChristy v. Hall County, 140 S.W.2d 576 (Tex.Civ.App., 1940), no writ hist.; City of Dallas v. Rash, 375 S.W.2d 502 (Tex.Civ.App., 1964), writ ref., n. r. e. In each of these cases there was a second or subsequent taking in which the property later acquired was not originally designated for acquisition, or presents a situation where a different condemning authority was seeking to acquire other property. In the case at bar there was no change in the condemning authority and the property sought to be acquired was never considered to be outside the configuration of the airport complex.

It apparently was the position of appellees that the property purchased from the Jetero Ranch Company was the original airport and that anything added thereto constituted "second or subsequent taking." For the reasons heretofore stated, we do not believe that such position can be substantiated. It does not appear that the city used such property as an airport prior to including it in the City's master plan. Neither was it so used prior to the City's adoption of the resolution to condemn the Barshop tract or prior to initiating the instant condemnation proceedings. It would probably be conceded that the city could not have used the initial tract acquired from the Jetero Ranch Company as an airport without thereafter acquiring the outstanding fractional interest therein along with the considerable amount of additional property necessary to make it conform with what an airport complex should contain in ground space. We find no evidence in the record on which to base the conclusion that this airport complex was to be taken and constructed in independent segments.

One additional case in which appellee places reliance is Uehlinger v. State of Texas, Tex.Civ.App., 387 S.W.2d 427, writ ref., n. r. e. This case was reversed on other grounds and the following was not necessary to the determination there made. However, the court there said, "The rule is now well established that even though a

specific parcel of land may have been considered by the condemnor to be a part of the original project, if the condemnor proceeds with acquisition of some portions of the project and *unnecessarily delays* as to other tracts, the owner of property later taken will be entitled to the reasonable market value of same on the date it is actually taken, including enhancement in value brought about for any proper reason, whether by preceding portions of said project or otherwise." (Emphasis added). In support thereof the court cites City of Dallas v. Shackelford, supra; City of Dallas v. Rash, supra; and State v. Willey, supra.

 While it may be true that in the instant case a considerable time elapsed between the date of the ordinance authorizing condemnation and the date of taking it cannot be said as a matter of law that the condemnor "unnecessarily delayed" in the acquisition of the subject property. Neither can it be said that the time that elapsed was altogether attributable to the condemnor. With the large land area necessary to be acquired and with the size and complexity of the project here involved, what might appear to be an "unnecessary delay" might very well be the minimum time necessary for the undertaking. Conceding, arguendo, that there was a substantial delay in the acquisition of the subject property, we are familiar with no Texas authority for the proposition that such delay, absent other significant factors, is sufficient to support the entitlement of condemnee to enhancement of the value of his property by virtue of it.

Too Fan v. City of El Paso, 214 S.W.2d 158, no writ hist., cites City of Dallas v. Shackelford, supra, and contains what is commonly referred to as the "Too Fan" instruction. This instruction is a prohibition on attaching enhancement to the value of property being condemned that is occasioned by the public improvement itself. In the retrial of this case we are of the opinion that a modification of the "Too Fan" instruction is appropriate.

That is, the enhancement in value occasioned by the public facility itself that occurred subsequent to the city's affirmative public action reflected in its ordinance of October 11, 1960 must be excluded. Whatever enhancement that occurred as a result of the action of the private corporation, the Jetero Ranch Company, or the action of the City of Houston short of its official and public action reflected in its ordinance of October 11, 1960, properly inures to the benefit of the condemnee. Once the city acts publicly and officially, as it did here on October 11, 1960, enhancement by virtue of the proximity of the property to the proposed public facility may not be considered.

We are of the opinion that the trial court erred in permitting the testimony relative to the unrestricted enhancement in value of the property taken which was occasioned by the public improvement itself. The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.