CITY OF DALLAS V. C. M. SHACKELFORD ET AL.

No. A-1116. Decided February 5, 1947.
Rehearing overruled March 5, 1947.
(199 S. W. 2d Series, 503.)

*H. P. Kucera* and *A. J. Thuss, Jr.*, both of Dallas, for appellant.

*Emil Corenbleth* and *Sam Passman*, both of Dallas, for appellees.

MR. JUSTICE SLATTON delivered the opinion of the Court.

The following certificate is from the Honorable Court of Civil Appeals at Dallas:

"This is a condemnation proceedings in which the City of Dallas is seeking to condemn the whole of a parcel of land (four adjacent lots) owned at the institution of the proceedings by C. M. Shackelford, since deceased, and the suit is now prosecuted by his widow and a daughter. The land is sought to be condemned for use in connection with other property as a municipal public market. The usual proceedings were had and on trial in the county court the case was submitted to a jury on only one issue, that is they were asked to find from a preponderance of the evidence the reasonable market value of the property on January 4, 1945, that being the date when it is conceded the property was taken within the meaning of law. The City, appellant herein, excepted to the charge on the ground that it permitted recovery of any increase in value of the land attributable to the fact that the land in question was within the general area designated by the City on December 10, 1941, within which the public market would be located, and in this connection appellant requested the court in writing to instruct the jury as follows: 'Since the property under condemnation is a part of the original designated market site, you are instructed that in your answer to special issue No. 1, you shall not take into consideration any increase in market value, if any, which may have accrued to defendants' land due to the location of the public market on such designated site.' The court overruled appellant's exception to the charge and refused the special instruction requested. On the verdict of the jury fixing the value of the property under the charge of the court, judgment was rendered in favor of the owners for that amount; the judgment also properly disposed of the other questions involved, from which appellant perfected this appeal. On original submission, after due consideration, we affirmed the judgment below and filed a tentative opinion stating at length our reasons for the decision and our views on the questions of law involved. Pending action on appellant's motion for rehearing, at its request, also because we deem it advisable, the question of law involved are hereby certified to the Supreme Court for adjudication.

"The material facts are these: On December 10, 1941, the governing authorities of the City of Dallas adopted a resolution stating in the preamble, in effect, that on June 28, 1941, the qualified voters of the City authorized the issuance and sale of tax supported bonds for the purpose of acquiring lands on which to erect and establish a public market; stating further: 'and, Whereas, due to the declaration of war against Japan and the general unsettled conditions, it does not presently appear advisable or advantageous to embark upon the full realization of that

public improvement; and, Whereas, after consideration of many proposed sites by the City Council it now appears that the most suitable and advantageously located site for the erection of this market is in the territory bounded by'—here is set out field notes of a certain area in the City embracing about ten City blocks of varing sizes, including the block in which appellees' lots are located. The Preamble proceeds: 'and, Whereas, it appears that presently the property that should be acquired, and within the immediate future, is embraced in'—here is mentioned a number of blocks which did not include the block in which appellees' property is located. Then follows the Resolution, proper, Section 2 of which mentioned the blocks to be immediately acquired, not including the land in question. Section (3) 5 of the Resolution directed that appropriate steps be taken by the proper officials of the City for the acquisition of the property to be immediately taken, first through voluntary negotiations, and, if such steps were not successful, that appropriate proceedings be instituted to condemn the property in the exercise of the power of eminent domain.

"After adopting the resolution of December 10, 1941, designating the lands to be immediately taken, City officials began its acquisition; among others, acquired title to a block referred to in the testimony as the 'Donaldson Block,' upon which the City erected a market shed for use by farmers and truckers hauling fresh vegetables and fruit to market for sale.

"After the events above mentioned and after the shed had been erected and put in use, in the latter part of October (25) or first of November 1944, the City authorities decided to acquire the property in question and adopted a resolution, its caption reading: 'A RESOLUTION DETERMINING UPON THE NECESSITY OF ACQUIRING THE HEREINAFTER DESCRIBED LAND TO BE USED IN CONNECTION WITH CONSTRUCTING A MUNICIPAL PUBLIC MARKET.' The resolution proceeds: 'Section 1. That it is hereby determined that public necessity requires the construction of a Municipal public market, and that the City of Dallas should acquire the land necessary for this project. Section 2. That the hereinafter described property owned by the hereinafter named parties is hereby determined to be necessary for the construction of a public municipal market; describing the property involved here; and the Director of Public Works and Right-of-way Engineer were authorized to offer the owners $8,500 for the property, naming the owners. These officials made the offer as directed, which was refused; thereupon, the City Council adopted a resolution ordering the condemnation and appropriation of the property and au-

thorized the City Attorney to file the necessary proceedings, which was done sometime during the month of November 1944.

"Although appellees' property was within the general ten-block area described in the Resolution of December 10, 1941, within which the public market was to be located, it was not to be presently taken, nor did we think it appeared when, if ever, it would be taken for the public purpose, as at that time the war was on with Japan and the general unsettled conditions mentioned in the resolution resulted in this Government entering the war then in progress in Europe. When these wars would end, or the result thereof, or the economic conditions that would be left after they were over, were unknown and unpredictable. In the meantime, the City proceeded to acquire the property designated for immediate acquisition, built on one block a market shed which, the evidence shows, benefitted and enhanced the value of appellees' property as well as other properties similarly situated. During this hiatus in the proceedings the property in question was sold and purchased several times, presumably at its enhanced value due to the improvements previously made. So we concluded that under the facts and controlling rules of law the owners should not be deprived of the same benefits they would have enjoyed if the land had not been taken, in view of the fact that there was no definite purpose manifested by the City to take the property until in the fall of 1944.

"The questions of law which we deem advisable to present to the Supreme Court for adjudication are these:

### FIRST

"Were the owners entitled to recover the increase in value of their property due to the fact that it was located in the ten-block area designated in the Resolution of December 10, 1941, within which the City intended to establish the public municipal market, and the subsequent partial establishment of same prior to the taking of the property involved herein?

### SECOND

"Under the facts, should the trial court have given the special charge requested by the appellant?"

Rule 466, Texas Rules of Civil Procedure, in part provides:

"Except in cases of emergency * * * all cases certified to the Supreme Court under Rule 461 shall be accompanied by a proposed or tentative opinion of the Court of Civil Appeals, which

proposed or tentative opinion shall set forth the views and tentative opinion of the Court of Civil Appeals on the questions certified * * *.''

This provision of the rule was promulgated for the obvious purpose of aiding the Supreme Court in deciding the questions of law which are certified by the courts of civil appeals.

The Honorable Court of Civil Appeals has complied with this rule, and since its opinion correctly decides the law questions presented by this certificate, we adopt the following paragraphs of its opinion:

"Now, applying the legal tests announced by the courts to the facts, we do not think it can be correctly said that the resolution of December 10, 1941 necessarily and with particular certainty foreshadowed the taking of appellees' property for the public purpose mentioned; nor, as stated by Chief Justice James, was the property sought to be condemned simultaneously and in a common proceeding with the other lands specifically designated in the resolution for immediate acquisition. Although appellees' property was within the general ten-block-area designated in the resolution of December 10, 1941, for the location of a public market, yet it was not to be presently taken; nor did it then appear when, if ever, it would be taken for the public purpose. The resolution itself stated that, due to the declaration of war against Japan and the general unsettled conditions, it was not advisable to embarke upon the full realization of the public improvement; hence, for these reasons, the City entered upon only a partial realization of the improvement.

"At that time war with Japan was on; the general unsettled conditions mentioned indicated that this government might be drawn into the European war then in progress, which very soon became an actuality. When these wars would end, or the result thereof, or the economic conditions that would be left in their wake, were unknown and unpredictable. In the meantime, the City proceeded to acquire the property designated for immediate acquisition, and built upon one block a market shed. These improvements, as the evidence showed, benefitted and enhanced the value of appellees' property, as well as other properties similarly situated. The record discloses that the property under consideration was several times sold during this period, presumably at its enhanced value due to improvements already made. In a proper case under the facts condemnor should not have to pay

the increased value of property taken, due to the public improvement itself; but, under the facts of the instant case, we do not think the owner should be deprived of the same benefits he would have enjoyed if the land had not been taken,—in view of the fact that there was no definite purpose manifested by the City to take it until in the fall of 1944. In addition to the other facts and circumstances, we think the resolution adopted as the first step towards taking this property, indicates as much. Its caption reads: " 'A RESOLUTION DETERMINING UPON THE NECESSITY OF ACQUIRING THE HEREINAFTER DESCRIBED LAND TO BE USED IN CONNECTION WITH CONSTRUCTING A MUNICIPAL PUBLIC MARKET.' 'Section 1. That it is hereby determined that public necessity requires the construction of a municipal public market, and that the City of Dallas should acquire the land necessary for this project. Section 2. That the hereinafter described property owned by the hereinafter named parties is hereby determined to be necessary for the construction of a public municipal market. * * *.' "

"If appellees' property had been designated in the resolution of December 10, 1941, for immediate acquisition, by purchase or condemnation, along with the other properties so designated for that purpose, doubtless the condemnation could be considered simultaneous and in a common proceeding; but such was not the case. When, in the fall of 1944, the City finally decided to acquire the property by purchase or condemnation, it had already been benefitted and enhanced in value as the result of improvements made by the City as the result of an entirely separate and disassociated proceedings. So we conclude that, in fixing the value of appellees' property as of the date it was taken,—January 4, 1945, it was entirely proper for the jury to take into consideration its enhanced value due to the previous steps taken by the City towards the establishment of a public municipal market. This conclusion, in our opinion, is supported by the following Texas case: City of El Paso v. Coffin, supra (88 S. W. 502); Gulf, C. & S. F. Ry. Co. v. Brugger, 59 S. W. 556; McChristy v. Hall County, 140 S. W. (2d) 576; and San Antonio etc. Ry. v. Ruby, supra (80 Texas 172, 15 S. W. 1040).

The conclusions of the Court of Civil Appeals above quoted clearly demonstrate the correctness of the ruling of the trial court in refusing to give in the charge to the jury the special requested charge of the city.

It follows that the question of law designated No. 1 must

be answered in the affirmative, and question No. 2 must be answered in the negative.

Opinion delivered February 5, 1947.

Rehearing overruled March 5, 1947.