Joe BARSHOP et al., Petitioners,

v.

CITY OF HOUSTON, Respondent.

No. B–1218.

Supreme Court of Texas.

June 25, 1969.

Rehearing Denied July 30, 1969.

Hofheinz & James, W. Ervin James, Reynolds, White, Allen & Cook, William H. White, Houston, for petitioners.

William A. Olson, City Atty., Joseph G. Rollins, Asst. City Atty., Houston, for respondent.

POPE, Justice.

Petitioner, Joe Barshop, owned 52.66 acres of land which the City of Houston condemned for its new Houston Jetero Intercontinental Airport. The whole tract was taken on July 7, 1964, and the jury found, in answer to the only issue submitted, that the market value of the tract on that date was $168,512.00. Houston successfully contended in the court of civil appeals that the trial court improperly admitted evidence which was based upon the enhanced value of the property occasioned by the public facility itself. 431 S.W.2d 914. That court reversed the judgment of the trial court and remanded the cause directing the trial court to instruct the jury that the enhancement in value occasioned by the public facility itself and which occurred after October 11, 1960, must be excluded. That was the date Houston enacted an ordinance which authorized the city attorney to offer Barshop $63,192.00 for his property. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The long period of time which elapsed between Houston's initial plans and discussions about a new airport and the date it actually took the Barshop property, creates the problem. On June 14, 1950, Houston initiated a study of its future airport needs. In 1956 a group of citizens undertook to block up and acquire an airport site in the vicinity of the Barshop tract. The group was incorporated as the Jetero Ranch Company and its purpose was to acquire land for Houston's new airport. On November 6, 1957, Jetero and City of Houston agreed upon the sale and transfer to Houston of some 3,125 acres of land. On April 21, 1958, the City completed the purchase of the Jetero tract, subject to a small outstanding interest. It was generally known, however, that the Jetero tract was not large enough to accommodate the new airport. The Barshop tract was not a

part of the Jetero tract, but was located on its south edge, and near the south end of the north-south runway. It was beneath the flight path or approach zone of the runway.

In February, 1959, a firm known as Select Homes purchased the 52.66 acre tract at an enhanced value of $79,000.00. On April 20, 1960, Barshop purchased the tract from Select Homes at an enhanced value of $90,000.00. On October 11, 1960, Houston enacted an ordinance which authorized the city attorney to offer Barshop the sum of $63,192.00 for the tract. The ordinance required acceptance of the offer within five days. Houston did not communicate the offer to Barshop until thirty-two months later. On October 26, 1960, Houston passed an ordinance which designated a large body of land within which the airport would be located. The ordinance included the Barshop tract, but it did not commit Houston to a taking of any part of the additional area described in the ordinance. The ordinance authorized Houston's Director of Aviation, in cooperation with the Federal Aviation Agency, to determine which parts of the additional area would not be needed. The City Council later determined that large portions of the additional area would not be needed and would not be taken. On October 23, 1961, Houston adopted a Master Plan for Development of the Jetero Intercontinental Airport. The plan included the Barshop tract as a part of the airport tract. On June 18, 1963, Houston offered Barshop the sum of $63,192.00 which Houston had authorized by its ordinance of October 11, 1960. Houston instituted this suit for condemnation on September 29, 1963. The parties agreed that Houston took the property on July 7, 1964. They also agreed that the only issue was that of the market value as of that date. Whether the market value properly included enhanced value by reason of the airport development up to that date is the point here presented.

From the dates stated, it appears that there was a lapse of seven years between the time Houston initiated the study of its airport needs and the time Houston purchased the nucleus tract from Jetero in 1958. From that date until Houston made its offer to Barshop, an additional five and one-half years passed. The property was taken about one year later. During all of that time the property was on the very edge of the airport and there was a continuing state of uncertainty whether Houston needed and would take it.

Prior to the introduction of the evidence, Houston urged its motion in limine. The motion sought the exclusion of all evidence of enhanced value caused by the Jetero Airport. The court overruled the request. During the trial, Houston leveled objections to all value testimony which included any enhancement of value during any part of the time from the airport's inception up to the taking on July 7, 1964. The trial court overruled the objections. The trial court submitted only one issue to the jury. It asked about the market value on July 7, 1964 of the Barshop tract. Houston did not object to the issue, but did request an instruction to the jury that it should not consider any increase in market value of the tract which may have accrued by reason of the location of the airport for which the Barshop tract was being acquired. The trial court refused the requested instruction. The instruction requested was:

"In determining the market value of the 52.66 acres of land in question, as that is submitted to you in the special issue(s), you are instructed that since the 52.66 acres of land in question is within the boundary of the very airport for which it is being acquired, you shall not take into consideration any increase in market value of said 52.66 acres of land, if any there was, which may have accrued to said 52.66 acres of land due to the location of the airport for which it is being acquired."

The court of civil appeals reversed the trial court judgment and remanded the

cause for a retrial. It ordered the trial court, on retrial, to instruct the jury that it could consider no enhancement in value which occurred after October 11, 1960, the date of Houston's ordinance which authorized the city attorney to make an offer to Barshop. The court of civil appeals, thus, would permit the jury's consideration of some enhancement of value by reason of the general notoriety about the location of the airport, but would prohibit the jury's consideration of such enhancement which occurred after October 11, 1960. The court's selection of that date, in our opinion, finds no basis in the trial court proceedings, since Houston consistently urged that all enhanced value should be excluded.

■■ The general rule is that the market value of property which is condemned is determined as of the date of the taking of the property, which in this case was July 7, 1964. San Antonio & A. P. R. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040 (1891). Another general rule is that value should not include any enhancement which is occasioned by the public facility itself. Morrow v. St. Louis, A. & T. R. Co., 81 Tex. 405, 17 S.W. 44 (1891). The rule which excludes evidence of enhancement value has been subjected to exceptions in certain instances. In 1, Orgel on Valuation Under Eminent Domain, § 99a, the exceptions to the general rule are stated as "* * * cases in which the land taken was not within the original scope of the project, but was needed for expansion or for the purposes which might be regarded as incidental to the project;" and "cases in which the general location of the project is fixed, but the exact location or the extent thereof is uncertain."

Texas recognized these exceptions in City of Dallas v. Shackelford, 145 Tex. 528, 199 S.W.2d 503 (1947). In that case, the City of Dallas in December of 1941 adopted a resolution which stated a purpose to condemn ten city blocks for the construction of a public market, but by reason of the unsettled conditions occasioned by World War II, the resolution expressed a present purpose to condemn only two blocks. In January of 1945, it took the eight blocks which it had omitted from its earlier original plan. This court held that the landowner who owned property in the eight-block area could avail himself of the enhanced value to his property.

City of Dallas v. Shackelford stated a rule or test for fixing the valuation date in instances of delayed, separate, or uncertainty of taking and also stated certain factors it considered in applying the test. It announced the rule that the valuation date was the date of taking and the valuation properly included benefits and enhanced value as a result of improvements up to the time the City manifested a definite purpose to take the land. Several factors aided the court in arriving at its conclusion. City of Dallas did not designate the additional eight blocks for immediate acquisition, the lands were not to be presently taken, there was a state of uncertainty about when, if ever, the City would take the property, there were separate proceedings to take the property in stages, and the proceedings were not begun simultaneously and in a common proceeding. The court held that Dallas did not manifest a definite purpose to take the additional property until November of 1944 and approved the allowance of evidence about enhanced value up to January 4, 1945, the date of the taking.

■ Under the rule of the Shackelford case, Barshop was entitled to recover the market value for his property which included enhanced value for, at least, a number of years. For fourteen years, public information was abroad that the Jetero Airport was going to be located in the area of the Barshop tract. Whether the tract would be adjacent to or would actually be included in the airport site was in a continuing state of uncertainty, which only Houston could resolve. Houston did not urge the trial court to exclude evidence of enhanced value after October 11, 1960. It urged that all enhanced value should be excluded.

■ The trial court was not in error in overruling Houston's objections to all enhanced value evidence, when at least a large part of it was admissible. Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339 (1944). The jury instruction which Houston requested was not a substantially correct one in view of our holding that enhanced value, at least to some date, was proper for the jury's consideration. If the trial court had given the requested instruction it would have constituted reversible error under the holding in City of Dallas v. Shackelford, 145 Tex. 528, 199 S.W.2d 503 (1947). We conclude that the trial court did not commit error in refusing the incorrect request. Rule 273, Texas Rules of Civil Procedure.

■ We must determine, however, whether some other point before the court of civil appeals will support the judgment which reversed the trial court judgment. McKelvy v. Barber, 381 S.W.2d 59 (Tex.Sup.1964). Houston asserted a point that the trial court erred in admitting value evidence of a sale to the Southwestern Bell Telephone Company which was not comparable to the Barshop tract. Barshop's value witness testified that a landowner sold a one-acre tract to the Telephone Company for $16,000.00. The proof showed also that the company was under compulsion by reason of special technical requirements to purchase a small tract which was located at a point no farther than seven-tenths of a mile from the airport's main entrance. The admission of the evidence was error since it was a sale under compulsion, Robards v. State, 285 S.W.2d 247 (Tex.Civ.App.1955, writ ref. n. r. e.), and there was a disparity in the size of the two properties under comparison. Morgan v. State, 343 S.W.2d 738 (Tex.Civ.App.1961, writ ref. n. r. e.).

The evidence was not harmful, however. The jury fixed the value of the Barshop tract at $3,200.00 an acre. Barshop's value witness testified about fourteen other comparable sales. He testified about one sale for $5,000.00 an acre and another sale for $8,500.00 an acre. There was evidence of a sale to Mobil Oil Company of a corner lot for $60,000.00. The tract was less than an acre in size. Since Houston did not object to this other evidence of values much higher than that allowed by the jury for the Barshop tract and there was other evidence of sales of tracts much smaller than the Barshop tract to which evidence Houston did not object, we regard the value evidence about the sale to the Telephone Company as harmless. The admission of the improper evidence from the whole record, was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in the case. Rules 434 and 503, T.R.C.P.; Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup. 1963); City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954).

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.