**E. T. FULLER, Jr., et al., Petitioners,**

v.

**The STATE of Texas, Respondent.**

**No. B–2067.**

Supreme Court of Texas.
Dec. 16, 1970.

Rehearing Denied Dec. 31, 1970.

Weller, Wheelus, Green & Brocato, Anthony G. Brocato, Beaumont, for petitioner.

W. G. Walley, Jr., Beaumont, for respondent.

SMITH, Justice.

In this condemnation case the State has acquired a tract of land measuring 50 feet by 680.55 feet, and consisting of 0.781 acre. The only issue in the trial was the amount

owed by the State to the owners, Petitioners here, as just compensation. We have considered this same tract, along with an identical tract, in another opinion, 407 S. W.2d 215 (Tex.Sup.1966). The area in question is set out in the plat below.

[A3322]

In the earlier case one of the issues was whether the landowners or the State was entitled to ownership of the abandoned railroad right-of-way, measuring 100 feet by 680.55 feet, which lay between the landowners' property and U. S. Highway 69. We held that the State was the owner of the western half of the right-of-way, adjacent to the highway, and that the Fullers were the recognized owners of the eastern half, adjacent to their property. In this proceeding the State has condemned that eastern half of the right-of-way. The parties have stipulated that the date of taking was August 19, 1965. The jury found, in response to the single special issue, that the property's market value on that date was $34,028.00, and the trial judge rendered judgment in that amount. The Court of Civil Appeals, at 451 S.W.2d 574, reversed and remanded, holding that the trial court erroneously excluded certain evidence of the property's market value from the jury's consideration. We affirm.

Testimony of only two witnesses was offered to prove the condemned land's market value. Williamson, who testified for the landowners, based his testimony upon transactions involving land which had highway frontage comparable to that of the condemned property along U. S. Highway 69. Williamson fixed the condemned land's value at $34,028.00, the estimate accepted by the jury. The testimony of the State's witness, Hall, was excluded. His testimony, developed in a bill of exception,

was based upon transactions involving land having no highway frontage. He fixed the land's value at $3275.00. The disparity of their testimony arose from the fact that, prior to the date of taking of the land here in question, the State had commenced construction under a general plan to widen Highway 69. As of the date of taking of the property condemned in this case, the State's road contractors were in the process of widening the portion of the highway along the landowners' property line so that the shoulder of the highway extended onto the fifty-feet wide strip awarded to the State in our earlier judgment. The landowners' property is being condemned for a frontage road beside that portion of the newly widened highway. The former railroad right-of-way adjacent to the tract between French Road and the landowners' property had been acquired by the State earlier, and as of the date of taking of the condemned property the State's contractors had already performed a substantial amount of work on that strip, even to the point of pouring the concrete surface of the frontage road. Williamson's testimony was based upon the assumption that the condemned property had highway frontage on the date of taking, and was therefore suited to commercial use.

The gravamen of the landowners' objection to the testimony of the State's witness was that, by failing to take into consideration the existence of the newly widened U. S. Highway 69 adjacent to the condemned property, the witness was basing his testimony upon the erroneous assumption that the landowners' property lacked highway frontage. The State argued that the land did lack highway frontage because, first, the issue of access of the Fullers' half of the right-of-way to Highway 69 was foreclosed by judgment in the earlier case and, second, because the newly-widened portion of Highway 69 had not been, on the date of taking, opened to traffic. The State urged in a motion in limine that the landowners should not be allowed to offer testimony based on the assumption that the condemned tract had highway frontage. The trial court sustained the landowners' objection to the State's proffered testimony and overruled the State's motion in limine.

In the Court of Civil Appeals, the State urged that the trial court erred in both rulings. The intermediate court held that the trial court erred in excluding Hall's testimony. We agree with that holding, but disagree with the court's reasoning. The court in effect held that the parties were estopped by our judgment in the earlier case. The particular part relied upon to sustain their estoppel theory reads:

"At the present time * * * the Fullers do not own land abutting on the highway and have no right of access thereto across the tract awarded to the State in this action." 407 S.W.2d at 221.

The Court of Civil Appeals held that this condition was necessarily limited in time to the date of the trial court's judgment in that case (October 26, 1964). But because the newly-widened portion of Highway 69 along the condemned strip had not, on the date of taking in this case, been opened to traffic, the court held that conditions had not changed between the earlier announcement by this Court and the date of taking. Therefore, the Court reasoned, it was error to exclude Hall's testimony. The majority of the Court went on to hold, however, that it was not error to admit Williamson's testimony. The majority reasoned that "a prospective purchaser, seeing the progress being made upon the frontage road, would have taken into consideration the fact that within a few weeks the Fuller land would be adjacent to a paved road and part of the State highway system." 451 S.W.2d at 579.

Only the landowners have petitioned this Court to review the holding below, and their writ was granted upon a point relating to the alleged error of the court's holding that Hall's testimony was admissible. We are therefore not called upon to review the court's holding that Williamson's testimony was also admissible. Our holding

regarding Hall's testimony necessarily implies, however, our opinion of the admissibility of Williamson's, and because this case will be remanded for new trial we express our opinion in some detail so that this case can be disposed of properly upon retrial.

"The general rule is that the market value of property which is condemned is determined as of the date of the taking of the property. * * * San Antonio & A. P. R. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040 (1891). Another general rule is that the value should not include any enhancement which is occasioned by the public facility itself. Morrow v. St. Louis, A. & T. R. Co., 81 Tex. 405, 17 S.W. 44 (1891)." Barshop v. City of Houston, 442 S.W.2d 682, 685 (Tex.Sup.1969). See also Housing Authority of the City of Dallas v. Hubbard, 274 S.W.2d 165 (Tex. Civ.App.—Dallas 1954, no writ hist.); State v. Vaughan, 319 S.W.2d 349 (Tex. Civ.App.—Austin 1958, no writ hist.); Rayburn, Texas Law of Condemnation, § 156(2); 4 Nichols on Eminent Domain § 12.3151. Our study of the record has convinced us that the issue to be decided in this case is not whether the condemned tract had access to the newly-widened Highway 69 on the date of taking, but rather whether the second rule we stated in *Barshop*, just quoted, should be applied in this case. We hold that Hall's testimony as to the condemned tract's value was improperly excluded. By necessary implication we also hold that Williamson's testimony should have been excluded, because it reflected an enhancement in the land's value which is attributable to the government improvement for which the land is condemned.

As we noted in *Barshop, supra,* the rule against allowing the landowner to benefit from such enhancement of his property's value is subject to two general exceptions. As stated in 1 Orgel, Valuation under Eminent Domain § 99a, those exceptions obtain in "cases in which the land taken was not within the original scope of the project, but was needed for expansion or for the purposes which might be regarded as incidental to the project," and "cases in which the general location of the project is fixed, but the exact location or the extent thereof is uncertain." Representative of the latter situation are *Barshop, supra,* City of Dallas v. Shackelford, 145 Tex. 528, 199 S.W.2d 503 (1947), and Uehlinger v. State, 387 S.W.2d 427 (Tex.Civ.App.— Dallas 1965, writ ref'd n.r.e.). But the instant case does not fall into that exception. Here there never was any uncertainty about whether this tract would be taken for the general purpose of widening U. S. Highway 69. The record reflects that the Highway Department began making plans to widen that highway as early as 1961, and that the department always contemplated using the entire abandoned railroad right-of-way, half of which is involved here. The cases cited above involve not only uncertainty of taking, but also unreasonably delayed taking; here again there is no unreasonable delay. In this case the State first instituted condemnation proceedings against the property in question in December, 1962, but the proceedings were delayed by the title suit referred to above. Our judgment in that title dispute was handed down October 5, 1966. On December 30, 1964, the State's motion to dismiss its condemnation suit was granted. The State has argued in its brief and in oral argument that the case was dismissed in order to avoid contesting the landowners' contention that the proceeding was invalid for want of a bona fide effort to negotiate. In any event, the State filed against the property again, on January 4, 1965. The case was tried in July, 1969. In *Barshop, supra,* the delay and uncertainty persisted for twelve to thirteen years. In this case, as discussed above, there was never any uncertainty, and the delay was considerably less, and a portion of the delay is attributable to the title dispute. Merely to argue that the parties were uncertain as to *when* the property would be taken, as Petitioners have argued here, is

insufficient to bring a case within the scope of the *Barshop* holding. To come within the scope of that holding, there must also be uncertainty as to *whether* the property will be taken.

The other exception to the rule against allowing landowners to benefit from enhancement of their property's value prevails when the condemnor first takes a limited amount of land, the value of nearby property increases, and then the condemnor takes an additional amount of land. Representative of that exception are City of Dallas v. Rash, 375 S.W.2d 502 (Tex. Civ.App.—Dallas 1964, writ ref'd n.r.e.); State v. Cartright, 351 S.W.2d 905 (Tex. Civ.App.—Waco 1961, writ ref'd n.r.e.); State v. Willey, 351 S.W.2d 900 (Tex.Civ. App.—Waco 1961, no writ hist.); Mc-Christy v. Hall County, 140 S.W.2d 576 (Tex.Civ.App.—Amarillo 1940, no writ hist.); City of El Paso v. Coffin, 88 S.W. 503 (Tex.Civ.App.1905, writ dism'd). In McChristy v. Hall County, *supra*, the county had acquired by condemnation a right-of-way through the landowner's property, for the purpose of building a road. Then later, in a separate and independent proceeding, the county condemned an additional small strip adjacent to the right-of-way it had earlier condemned, for the purpose of procuring earth, stone and gravel from it for use in building the road. But in this case there was no comparable first taking. Our first opinion, it should be remembered, was not an adjudication of a condemnation proceeding, but rather a title dispute between the Fullers and the State. Once the State had been declared the owner of the western half of the right-of-way, it immediately began to effect its pre-existing plans to condemn and utilize the eastern half.

For the reasons stated, the judgment of the Court of Civil Appeals is affirmed.

McGEE, J., notes his dissent.