**CITY OF FORT WORTH, Appellant,**

v.

**Mary Elizabeth CORBIN et al., Appellees.**

**No. 17370.**

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 16, 1973.

Rehearing Denied March 16, 1973.

S. J. Johndroe, Jr., City Atty., and Jerome H. Parker, Jr., and John F. Bell, Asst. City Attys., Fort Worth, for appellant.

Kelsey & Wood and Richard H. Kelsey, Denton, James R. Handy, Hurst, for appellees.

OPINION

LANGDON, Justice.

This is a condemnation suit in which the City of Fort Worth, the appellant, is taking the entire tract of land belonging to the appellees for the Dallas/Fort Worth Regional Airport. The right to take the land for this purpose was stipulated. A jury trial was had to decide the value of the land being taken.

We affirm.

Trial on the merits commenced in the District Court on Monday, April 17, 1972. On the second day, the trial court refused to permit the expert appraisal witness, William Oswald, to answer questions pertaining to the market value of the Corbin lands, excluding increase after September 30, 1968, due to the announcement and construction of the Dallas/Fort Worth Regional Airport. Subsequently, the court read into the record its ruling concerning the contentions of the parties and the points raised on this appeal. The ruling was as follows:

"All right. Mr. Reporter, while the jury is still out and out of their presence the

Court wishes to state for the record that shortly prior to recessing on the afternoon of April 18, 1972 that this question came up and the Court is not certain whether the record reflects it or not, it being the contention of the City of Fort Worth, as we understand it, No. 1, that in arriving at the market value for the Corbin properties that no increase, if any, in value due solely to the location, et cetera, of this airport should be considered and alternatively no increase in value, if any, to the Corbin properties due solely to the location of the airport subsequent to the date of September 30, 1968 should be considered, and the Court refused to admit before the jury such testimony at that time and ruled that the date on which airport influence, so to speak, would be cut off would be the date of October 27, 1969, the date on which the City of Fort Worth first made contact on a personal and direct basis, at least, with the members, with the Defendants in this case, and that being by letters of the same date addressed to Miss Mary Elizabeth Corbin and a like letter addressed to her mother and father, W. Boyd Corbin and Mrs. Nana Corbin."

The trial court, in line with the above ruling, refused to include in its charge to the jury either of the following Special Instructions requested by appellant:

" 'Specially Requested Instruction No. A'

" 'In arriving at your answer to the special issues in this charge which inquire as to the market value of the Corbin property, you are instructed not to consider increase in value, if any, of the Corbin property caused by the announcement, location or construction of the Dallas/Fort Worth Regional Airport project.' . . .

" 'Specially Requested Instruction No. B'

" 'In arriving at your answer to the special issues in this charge which inquire as to the market value of the Corbin property, you are instructed not to consider increase in value, if any, of the Corbin property caused by the announcement, location or construction of the Dallas/Fort Worth Regional Airport project after September 30, 1968.' "

The trial court overruled the objections of appellant to its refusal to submit either of the above requested instructions and instead of the requested instructions used the following instruction in its charge:

"You are instructed that in answering Special Issues Nos. 1 and 2 you will not consider any increase in value, if any, which may have accrued to the Defendants' land after October 27, 1969, due solely to the announcement, location, design, construction or operation of the airport in question."

The selection and use by the court of October 27, 1969, as the date on which the landowners were first notified on a personal and direct basis that their land was to be included in the project rather than the selection and use of earlier dates suggested by the appellant and the attendant instructions to the value witness and to the jury with reference to the date chosen by the court is the essence of this appeal which is based upon thirteen (13) points.

The court's action is also attacked because of its effect upon the introduction of exhibits relating to earlier cut-off dates suggested by the appellant.

By way of argument the appellant contends that the above rulings of the court resulted in the rendition of an excessive verdict and improper judgment because the jury (1) was permitted to consider increase in value of the land to a point in time long after it had become a certainty that the certain lands were needed and would be taken for airport purposes and (2) was denied the privilege of hearing the testimony of the expert appraisal witnesses, Oswald and Kimball, as to the value of the certain lands, exclusive of increase due to the airport, or in the alternative, exclusive of such increase accruing after September 30, 1968.

The alternative date above suggested by the appellant was to avoid the error made by the City of Houston in Barshop v. City of Houston, 442 S.W.2d 682 (Tex.Sup., 1969) in which the court held that it was proper for the jury to consider enhanced value, "at least to some date" and therefore Houston's requested instruction excluding all enhancement was not a substantially correct one.

The record contains testimony to the effect that (1) the boundary line of the project "floated" and that the lack of knowledge concerning its exact location caused the general market in the area to be stagnated because of such uncertainty, and (2) that the value found by the jury was the value of the property in question, disregarding entirely the economic effect of the proposed airport.

The record reflects conflicting evidence as to the actual location and dimensions of the boundaries of the project. Exhibits of the condemning authority, introduced in evidence, stated that " ' . . . the Board shall prepare and present to the respective Councils of the Cities an over-all preliminary plan for construction of the Regional Airport contemplated by this Agreement, which plan shall be general in terms and shall contain by general description a statement of the initially contemplated size and scope of the Project and related land utilization.' " The same exhibits reveal the use of such words as "preliminary", "tentative", "projected", "proposed", and "approximate" in discussing "Initially Contemplated Size, Scope and Related Land Utilization". Such evidence demonstrated that as of September 27, 1968, the boundaries and scope of the project were not definitely fixed.

The testimony of the condemnor's witnesses, Downey and Oswald, indicated the absence of defined boundaries sufficient to put the appellees on notice that their land was to be included.

The witnesses, Taylor and Reed, residents in the area and experienced real estate appraisers and brokers, testified that the boundaries were indefinite. The condemnee testified that the first knowledge she had that her land was going to be taken was by letter.

■ The burden is upon the condemning authority to inform the individual landowner that his particular tract is to be included in a project. See the section, "Indefinite location", in Nichols on Eminent Domain, Vol. 4, Sec. 12.3151(2).

■ The delay in designating the tracts to be included is chargeable to the condemnor. Uehlinger v. State, 387 S.W.2d 427 (Corpus Christi Civ.App., 1965, ref., n. r. e.); Trinity River Authority v. Boone, 454 S.W.2d 258 (Houston Civ.App., 1st Dist., 1970, no writ hist.). In the case at bar the appellant could and should have written the letter of notice to appellees in September of 1968 or at such time as it was certain that the land of appellees was to be included in the project. This would have avoided uncertainty on the part of all parties.

■ We find and hold that appellant's identification and description of the tracts of land it desired for the project was indefinite and general in nature and this failed to provide the appellees with either actual or constructive notice that the land owned by them was included in the total area sought to be condemned. The exact location and extent thereof was uncertain. We further find and hold that the first and only notice of a definite and certain nature received by the appellees that their land was to be included in the project was the letter notice of October 27, 1969, which was sent to them by the appellant.

We therefore find and hold that the court correctly used October 27, 1969, as the cut-off date for enhancement and correctly instructed the value witnesses and the jury accordingly.

In the case of Barshop v. Houston, supra, the court said: "The general

rule is that the market value of property which is condemned is determined as of the date of the taking of the property, . . . . San Antonio & A. P. R. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040 (1891). Another general rule is that value should not include any enhancement which is occasioned by the public facility itself. Morrow v. St. Louis, A. &. T. R. Co., 81 Tex. 405, 17 S.W. 44 (1891). The rule which excludes evidence of enhancement value has been subjected to exceptions in certain instances. In 1, Orgel on Valuation Under Eminent Domain, § 99a, the exceptions to the general rule are stated as ' * * * cases in which the land taken was not within the original scope of the project, but was needed for expansion or for the purposes which might be regarded as incidental to the project;' and 'cases in which the general location of the project is fixed, but the exact location or the extent thereof is uncertain.'

"Texas recognized these exceptions in City of Dallas v. Shackelford, 145 Tex. 528, 199 S.W.2d 503 (1947) . . . .

"City of Dallas v. Shackelford stated a rule or test for fixing the valuation date in *instances of delayed, separate, or uncertainty of taking* and also stated certain factors it considered in applying the test. It announced the rule that *the valuation date was the date of taking and the valuation properly included benefits and enhanced value as a result of improvements* up to the time the City manifested a definite purpose to take the land. Several factors aided the court in arriving at its conclusion. City of Dallas did not designate the additional eight blocks for immediate acquisition, the lands were not to be presently taken, there was a state of uncertainty about when, if ever, the City would take the property, there were separate proceedings to take the property in stages, and the proceedings were not begun simultaneously and in a common proceeding. The court held that Dallas did not manifest a definite

purpose to take the additional property until November of 1944 and approved the allowance of evidence about enhanced value up to January 4, 1945, the date of the taking. . . ." See also Fuller v. State, 461 S.W.2d 595 (Tex.Sup., 1970).

In 48 Texas Law Review 1389, the author in evaluating the Barshop case, said: "The significance of Barshop lies not in the outcome, but in the Court's implication that enhancement resulting from a public improvement could be excluded after some point prior to the filing of supplemental condemnation proceedings. Although this point is not fixed, it would apparently occur when property was specifically designated by the condemning authority. Exclusion of enhancement prior to selection of a site for the project does not appear to be supported by the opinion. A broad enactment which merely declares an intent to construct a public improvement or to acquire a certain quantity of land without designating any particular tract still would not bar enhancement.

"Two situations might extend the period for inclusion of enhancement beyond the specific designation of a proposed acquisition. Notifying the condemnee that his particular property will be taken is a major purpose of requiring a specific designation by the condemnor. Consequently, a condemnor's identification of desired tracts that fails to provide landowners with either actual or constructive *notice would be* insufficient to deny enhanced value accruing from the project. Furthermore, even a specific enactment which provides notice may not support an exclusionary instruction when the condemnor delays acquiring the property for an unreasonable period of time.

"Within the limits of these considerations, Barshop seems to signal a movement toward a position midway between the previous Texas approach and the federal 'probable scope' rule. If this is an indica-

tion of future decisions, a condemnor can avoid project enhancement either by acting 'simultaneously and in a common proceeding' or by designating for acquisition all tracts required for an improvement prior to the institution of multiple proceedings.

"The latter alternative permits a more realistic approach to condemning property for large public improvements. By avoiding the difficulties of a simultaneous taking, the governmental unit can direct the acquisition of all desired land but defer actual condemnation until a particular tract is required. After its public designation, the condemnor is not forced to pay for project enhancement accruing during extended negotiations with individual landowners. At the same time, landowners' rights receive ample protection because the condemnor's specific designation removes uncertainty as to future land use. The requirement of no unnecessary delay between the time of designation and the actual taking also insures that property owners will not be treated unfairly. Consequently, the approach suggested by Barshop offers a more just compromise between the rights of the landowner and the need to minimize the cost of land for public projects." See footnotes 25 through 31, both inclusive, on pages 1392, 1393 and 1394 of above cited article.

This court is of the opinion that the author of the article in 48 Texas Law Review 1389, supra, has correctly interpreted Barshop as a case which signals a new Texas approach for evaluating project-induced enhancement in situations which require multiple condemnation proceedings and that the trial court in the case at bar correctly pursued this new approach.

We do not deem it necessary to discuss each of the points raised by the appellant. Suffice it to say that we have carefully considered each of them and hereby overrule each and all of them. We also overrule appellees' counterpoint. The judgment of the trial court is affirmed.