Opinion issued July 1, 2004














In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00832-CV




EMILE A. NASSAR, Appellant

V.

HOUSTON INDEPENDENT SCHOOL DISTRICT, Appellee




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 767,526




MEMORANDUM OPINION
          In this eminent domain case, appellant, Emile A. Nassar, appeals the judgment
award, which was based on the verdict of the jury. Nassar presents five issues in
which he challenges the trial court’s evidentiary rulings and its denial of his motion
for continuance.


 We affirm.
BACKGROUND
          In the fall of 2000, Houston Independent School District (HISD) determined
that Gregory-Lincoln School, a combined elementary and middle school in an
antiquated building, should be replaced. According to the plan, a new Gregory-Lincoln facility would be built on land to be acquired adjacent to the old building, the
old building would be razed, and a new High School for the Performing and Visual
Arts would be built on the original Gregory-Lincoln site. To effect this plan, HISD
began acquiring eight acres adjacent to Gregory-Lincoln School. 
          Nassar owned three tracts of land on Taft Street on which there were four
residential buildings containing four rental units each. It is uncontested that these
properties, located at 1401, 1407, 1505, and 1509 Taft Street, were well maintained
and were among the finest of the properties acquired by HISD. On February 25,
2002, HISD, seeking to condemn the properties, filed a petition in condemnation, and
in May 2002, a panel of special commissioners determined that the fair market value
of the properties was $890,000. HISD deposited that amount into the registry of the
court on May 20, 2002, an action that constituted the “taking.” Nassar objected to the
award, and the case proceeded to a jury trial. 
          At trial, three of Nassar’s former tenants, one of whom also did maintenance
work for Nassar, testified regarding the good condition of their apartments and
Nassar’s performance as a landlord. They were not asked about and did not testify
regarding the market value of the properties. They also were not asked about and did
not testify regarding any enhancement of the properties’ value resulting from the
Gregory-Lincoln project. 
          Nassar testified that he determined the value of similar properties in the
“eighties and nineties and 2002.” He testified that there had been an increase in the
value of his properties, but that the increase was not because of the Gregory-Lincoln
project. He further testified that he had looked at other four-plexes near his properties
in 2001 and 2002 and that he had entered into an earnest money contract on two
multi-family properties near his Taft properties in May 2002 and had closed on those
properties in June and July 2002. 
           HISD objected to any testimony regarding the value of those properties
because they were purchased after May 20, 2002, the date of the taking. The trial
court overruled the objection on the basis that Nassar had entered into the contract
before the date of the taking. HISD then objected to the testimony on the ground that
Nassar had known about the Gregory-Lincoln project for some time before May 2002
and that therefore the value of the properties was influenced by HISD’s acquisition
of eight acres near the properties. The trial court sustained this objection. 
          Nassar made an offer of proof in which he presented evidence of the sale of
four multiple-family residences that had been excluded by the trial court.


 Two of
these buildings had been purchased by Nassar in June and July 2002, although the
earnest money contracts had been executed in May 2002, before the date of the
taking. The remaining two buildings had been purchased in March 2003. These
properties had been sold at prices ranging from $76.07 to $91.58 per square foot and
formed Nassar’s basis for his valuation of his properties at $80.05 per square foot. 
          In his offer of proof, Nassar also offered a list of four vacant-land sales as part
of the basis of his opinion. Two of these lots had been sold in 2001 and 2000, and
evidence of these sales had been admitted into evidence. The other two lots had been
sold in August and October 2002, and they were not admitted into evidence. 
          During his trial testimony, Nassar introduced evidence of extensive
development in the area, including condominiums, townhouses and apartments. 
Nassar testified that, based on other sales that he considered to be comparable to the
condemned properties and his knowledge from owning properties in the area, he
believed that the total market value of his four four-plexes was $80.05 per square foot
for a total of $1,153,628. 
          Matthew Deal, a real estate appraiser who testified on behalf of HISD,
explained the different ways of determining the fair market value of real estate—by
sales comparison, by cost of land and improvements, and by income capitalization. 
Deal calculated the market value of Nassar’s properties using these three methods and
rendered his opinion that the properties’ value per square foot was $65, and the total
market value of the properties was $890,000. 
          The jury found the following fair market values for Nassar’s properties:
                    1401 Taft:              $251,384
                    1407 Taft:               251,384
                    1505 Taft:               213,328
                    1509 Taft:    211,988
                                                   $928,084

The trial court rendered judgment on the verdict, and Nassar filed this appeal.
DISCUSSION
Standard of Review
          We review Nassar’s complaints regarding the exclusion of evidence and the
denial of a continuance for abuse of discretion. See Owens-Corning Fiberglas Corp.
v. Malone, 972 S.W.2d 35, 43 (Tex. 1998) (stating that evidentiary rulings are
committed to trial court’s sound discretion); BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 800 (Tex. 2002) (stating that court will not disturb trial
court’s denial of motion for continuance absent clear abuse of discretion). “A trial
court abuses its discretion when it rules ‘without regard for any guiding rules or
principles.’” Owens-Corning Fiberglas, 972 S.W.2d at 43. 
Exclusion of Evidence
          In four issues, Nassar contends that the trial court abused its discretion in
excluding Nassar’s evidence regarding sales occurring after the date of the taking
without expert testimony to establish that such sales did not reflect a value that was
enhanced by the Gregory-Lincoln project, which was the reason for the taking. 
Nassar argues that his own testimony controverting HISD’s claim of project
enhancement should have been admitted, that his evidence of post-taking comparable
sales should have been admitted, and that the taking of his property was subject to an
exception to the rule against project enhancement. 
The Project-Enhancement Rule
          Compensation for land taken by eminent domain is measured by the fair-market
value of the land at the time of the taking. Exxon Pipeline Co. v. Zwahr, 88 S.W.3d
623, 627 (Tex. 2002). In determining fair-market value, the project-enhancement
rule provides that the factfinder may not consider any enhancement to the value of the
landowner’s property that results from the taking itself. Id. The objective is to make
the landowner whole. Id. at 628. The determination of the cutoff date for project
enhancement is a matter for the trial court and must generally precede any
determination of comparability of sales. City of Fort Worth v. Corbin, 504 S.W.2d
828, 831 (Tex. 1974). When an objection to evidence of a sale is made on the ground
that the value was affected by the project, the burden is on the party offering the
testimony to develop facts showing that the project did not affect the property’s value. 
State v. Bryan, 518 S.W.2d 928, 932 (Tex. Civ. App.—Houston [1st Dist.] 1975, no
writ). Until such a showing is made, the trial court has no discretion to admit the
evidence. Id. 
          In this case, when HISD objected to Nassar’s evidence of the value of
properties sold after the date of the taking, Nassar did not attempt to offer any
evidence that the value was not affected by the project other than his own opinion that
it was not. He admitted that he did not have any education or training as an appraiser,
and he did not offer any expert testimony on his own behalf. Nassar’s offer of proof
did not include any facts that would establish that the value of the properties after
May 20, 2002 was not affected by the Gregory-Lincoln project. Therefore, Nassar
did not carry his burden, and the trial court did not abuse its discretion in excluding
Nassar’s evidence of property sales after May 20, 2002. 
          The trial court also excluded evidence of two sales in which Nassar entered
into the contract before May 20. The court agreed with HISD that Nassar had notice
of the condemnation for some time before May 20. Although the market value of
condemned property is to be determined as of the date of the taking of the property,
that value should not include enhancement that is brought about by the project that
occasioned the condemnation. Zwahr, 88 S.W.3d at 628; Barshop v. City of Houston,
442 S.W.2d 682, 685 (Tex. 1969). 
          HISD filed its petition in condemnation in February 2002. Nassar entered into
an earnest money contract on the two properties in May 2002. Thus, he was aware
of the Gregory-Lincoln project when he contracted for the properties. That Nassar
was aware of the project when he contracted for the properties is at least some
indication that the value of these properties was affected by the project. Therefore,
the trial court did not abuse its discretion in excluding evidence of these two
purchases to establish the fair market value of the condemned properties. 
Exceptions to the Project-Enhancement Rule
          Nassar also argues that his condemned properties are subject to an exception
to the project-enhancement rule. Nassar contends that a condemnor is required to pay
the enhanced value of a property when it is taken for expansion of the public
improvement or for purposes incidental to it. To support this contention, Nassar cites 
Fuller v. State, 461 S.W.2d 595 (Tex. 1970); City of Dallas v. Shackelford, 199
S.W.2d 503 (Tex. 1947); and McAshan v. Delhi Pipeline Corp., 739 S.W.2d 130
(Tex. App.—San Antonio 1987, no writ). 
          Generally, there are two exceptions to the project-enhancement rule: (1) when 
the land taken is not within the original scope of the project, but was needed for
expansion or for purposes incidental to the project and (2) when the general location
of the project is fixed, but the exact location or the extent of the project is uncertain. 
Barshop, 442 S.W.2d at 685. The reviewing courts in Fuller and McAshan, while
stating the exceptions to the rule, concluded that those cases did not fall within the
exceptions. Fuller, 461 S.W.2d at 598; McAshan, 739 S.W.2d at 131. These cases
do not hold that the condemnor is required to pay an enhanced value under any
circumstances. They do not support Nassar’s contention.
          In Shackelford, the City, on December 10, 1941, designated a 10-block area to
be condemned for the construction of a public market. Shackelford, 199 S.W.2d at
504. However, the City authorized taking only a portion of the designated area. Id. 
That portion was acquired and the market was built. Id. Because of the country’s
involvement in World War II, further development plans were put on hold. Id.
Approximately three years later, the City authorized acquisition of the remainder of
the designated area and argued that the fair market value should be determined as of
1941. Id. The supreme court determined that, although the remaining area was in the
original designation, it was not clear when, if ever, that property would be taken. Id. 
 In the interim, that property had benefitted in value as a result of improvements made
by the City. Id. at 506 The supreme court concluded that, in determining the value
of the property on the date it was taken, the jury could take into consideration the
enhanced value of the property. Id. Thus, the court did not decide Shackleford based
on one of the general exceptions, but on the uncertainty and delay of the taking. See
Barshop, 442 S.W.2d at 685. 
          The taking of Nassar’s property did not qualify for any of the exceptions to the
project-enhancement rule. The property was within the original scope of the project,
the location and extent of the project were fixed and certain, and there was no delay
or uncertainty in the taking. 
          Because Nassar offered no evidence to establish that the value of the properties
sold after February 2002, the date by which he had notice of the condemnation and
the Gregory-Lincoln project, was not influenced by the Gregory-Lincoln project, we
hold that the trial court did not abuse its discretion in excluding evidence of those
sales. Accordingly, we overrule Nassar’s first four issues. 
 

Denial of Motion for Continuance
          In his fifth issue, Nassar contends that the trial court abused its discretion in
denying Nassar’s motion for continuance. No continuance shall be granted “except
for sufficient cause supported by affidavit, or by consent of the parties, or by
operation of law.” Tex. R. Civ. P. 251. The record does not contain a motion for
continuance or an affidavit. Because Nassar did not comply with rule 251, the trial
court did not abuse its discretion in denying the motion. See Tex. R. Civ. P. 251; see
also Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986) (recognizing presumption
that trial court does not abuse discretion in denying motion for continuance if motion
not supported by affidavit). We overrule Nassar’s fifth issue. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Alcala, and Higley.